WEST RIDGELAWN CEMETERY, PROSECUTOR-APPELLANT, v. THE CITY OF CLIFTON ET AL., DEFENDANTS-RESPONDENTS.

Submitted February 12, 1932—Decided May 16, 1932.

For the appellant, *Louis A. Fast* and *Merritt Lane.*

For the respondents, *John C. Barbour* and *Adolf L. Engelke.*

The opinion of the court was delivered by

CAMPBELL, J.  This is an appeal from a judgment of the Supreme Court dismissing a writ of *certiorari* issued for the purpose of reviewing the legality of the assessment and sale for taxes of lands of the appellant, West Ridgelawn Cemetery. The assessments were for the years 1922 and 1923.

The appellant was duly incorporated on October 3d, 1905, as a cemetery association, under the act entitled "An act to authorize the incorporation of rural cemetery associations and regulate cemeteries" (1 *Comp. Stat., p.* 372), and on December 12th, of the same year, obtained the consent and approval of the township committee of the township of Acquackanonk, acting as a board of health, to the location of such cemetery as required by the act before referred to.

Three tracts of land seem to have been considered necessary for the purpose and in order to assemble them, separate conveyances therefor were taken by the Passaic Trust and Safe Deposit Company.

These there tracts consisted of the acreages of sixty-six, lying generally west of Dwasline road, two and ninety-three-one-hundredths and fourteen and fifty-one one-hundredths, lying contiguous and both being generally east of Dwasline road.  The trust company which took title to these three tracts for the purpose of assembling them conveyed them to the appellant cemetery association in July, 1908, and such deed of conveyance provided "that the said land is to be used by the grantee, its successors and assigns, *for cemetery purposes only.*"

While formerly in the township of Acquackanonk the lands finally, and at the time of the assessment for taxes here under consideration, came within the corporate limits of the city of Clifton.  In assessing them for taxation purpose they were described in the tax rolls as two plots.  The first tract of

sixty-six acres was designated as "block 270, plot 25, Dwasline road, sixty-six acres" and the second and third tracts were combined and described as "block 281, plot 30-42, Passaic avenue, seventeen and one-half acres."

Both tracts were sold for the unpaid taxes of 1922 and 1923; the sixty-six acre tract to the city of Clifton and the seventeen and one-half acre tract to the Harrington company.

On June 25th, 1928, the cemetery association filed a bill in Chancery, against the Harrington company and the city of Clifton, for the purpose of quieting title to its lands because of the disturbance thereto by the certificates of sale for taxes thereof before referred to.

The Harrington company filed an answer setting up its tax certificates for the seventeen and one-half acres and also filed a counter-claim for the purpose of foreclosing its liens under such certificates, to which the cemetery association filed an answer.

The city of Clifton did not answer the bill of complaint or in anywise appear in the Chancery proceedings.

To the answer of the cemetery association to the counter-claim of the Harington company the latter filed a replication with notice that if the association failed to obtain a writ of *certiorari* under chapter 202, *Pamph. L.* 1925, to review and determine the legality of the tax assessments and certificates of sale it would move to strike out the answer.

On December 3d, 1928, a writ of *certiorari* was allowed bringing to the Supreme Court for review the assessments and sales for taxes in questions "against West Ridgelawn Cemetery for the years 1922 and 1923."

The return to the writ includes not only the assessment, levy and sale as to the seventeen and one-half acres sold to the Harrington company but of the sixty-six acres sold to the city of Clifton.

The matter was heard and decided in the court below with reference and respect to both tracts.

The Supreme Court found that taxes were assessed against the lands and paid for the years 1906 to 1921 inclusive; that the taxes for 1922 and 1923 were not paid and the property

was sold for such non-payment; that no appeal from such assessments was taken to the county board of taxation or to the state board of taxes and assessment, although an appeal was taken to the state board from the assessment for 1925 and 1926; that at the time that the assessments for 1922 and 1923 were made there were no interments in the smaller tract (seventeen and one-half acres) and those in the larger tract (sixty-six acres) were twelve and ceased after 1913; that the prosecutor-appellant became possessed of the lands in 1907; in 1909 a map was prepared of a portion of the lands subdividing it into cemetery plots; in 1912 a sign was erected with the name of the cemetery thereon; in 1913 a factional quarrel took place between two sets of trustees, and they did not function; in 1916 a deed for all the property of the prosecutor-appellant was executed to Adam Frank, in whose name the title remained until December 16th, 1924; during the entire time that the prosecutor-appellant or Adam Frank, its successor in title, held the property, taxes were paid thereon to the city of Clifton, thereby giving indication that the owners did not claim exemption; that the situation as it existed when the assessments in question were made, and for some years prior thereto, presented no *plain* indication that the property was then *being actually used* as a cemetery, or that such purpose was within reasonable contemplation and the only possible inference was that at such time the prosecutor-appellant had no purpose to claim an exemption for taxation upon the theory that the land was owned and used for cemetery purposes, made the test by *Fairview Heights Cemetery Co.* v. *Fay,* 90 *N. J. L.* 427; *affirmed,* 91 *Id.* 687, and that as all exemptions from general taxation are to be considered strictly and in case of doubt to be resolved in favor of the right to tax, under *Rosedale* v. *Linden,* 73 *Id.* 421, the exemption claimed had not been made out and the writ of *certiorari* was dismissed.

From such judgment of dismissal the cemetery association appeals and urges three grounds for reversal. 1. The lands in question were cemetery lands in 1922, 1923 and 1924, dedicated and used, exclusively, for cemetery purposes and were exempt from taxation.

This is purely a factual question and although the facts before the Supreme Court were not in serious conflict, that court passed upon them as it had a right to do.

In proceedings of this character, in review of a judgment of the Supreme Court the finding of that court upon questions of fact is a finality. This has been the settled law since *Moran* v. *Jersey City,* 58 *N. J. L.* 653, running through a long and perfectly harmonious line of adjudications from then to the present time.

We are here concerned only with the question whether the Supreme Court applied an erroneous principle of law or an improper statute or construction thereof to its finding of fact.

It seems to be contended that section 44 of the Cemetery act (1 *Comp. Stat., p.* 386) is not applicable and is designated by appellant as "Arbitrary Section 44" because it is a supplement of the original Cemetery act of 1851 adopted after that act had been repealed by the revision of 1877.

It seems to us that this is of no consequence, for, assuming it to be sound, there remains, admittedly, two sections of the act which are applicable and they are, section 4 (1 *Comp. Stat., p.* 373), providing that a cemetery association may hold lands not exceeding one hundred and twenty-five acres, such lands being adjoining and not exceeding a taxable value of $75,000 *"to be held and occupied exclusively for a cemetery for the burial of the dead;"* that such land or parts parts thereof as may be required for such purpose shall be surveyed and subdivided into lots and plots with avenues, paths, alleys and walks, as the trustees may deem proper and maps thereof filed in the office of the association; that lots and plots as shown on such maps may be sold subject to rules and regulations of the association and it then provides, *"that any portion of the property of any such company not actually set apart and used for burial purposes shall be subject to taxation until the same has been so set apart and used for actual purposes of burial, excepting roads and walks actually graded and in use."*

The other is section 8 (1 *Comp. Stat., p.* 375), which exempts the lands and properties of those associations "from

all public taxes, rates or assessments" and from liability "to be sold on execution * * * *so long as the same shall remain dedicated to the purpose of a cemetery. * * *.*"

Section 44, *supra,* grants the same exemptions to the land and property of the association *"actually used for cemetery purposes."*

As was said in *Fairview Heights Cemetery Co.* v. *Fay,* 90 *N. J. L.* 427, various enactments of this character are in *pari materia* and "must be considered together as presenting a cohesive and consistent legislative scheme declaratory of a state policy of setting aside, by a separate species of tenure, through corporate agencies, sections of land, free from taxation, when such lands are actually in use for the purpose declared in the statute."

It is further urged that we held in *Gottlieb* v. *West Ridgelawn Cemetery,* 109 *N. J. Eq.* 585, that section 8, *supra,* and not section 44, *supra,* was controlling. It is true that there the exemption was claimed under section 8, but the court was not in that case called upon to determine and settle any conflict or contest between these two statutes. What we did there settle was, "* * * under the statute, the land of the cemetery company cannot be sold for the purpose of satisfying a judgment *if it is a part of a tract laid out in lots for burial purposes although not presently used for such purposes. The mere fact that these lots have not yet been appropriated to the interment of bodies is immaterial."*

It is apparent that the tax exemption right is basically dependent upon a *bona fide* compliance with the provisions of section 4, *supra,* and when that is demonstrated as having taken place then the right of exemption follows either under section 8, *supra, "so long as the same remain dedicated to the purpose of a cemetery"* or under section 44, *supra,* because they are *"actually used for cemetery purposes."*

Thus viewed, and construed, we find no difficulty in reading them into a harmonious and perfectly intelligible plan.

So evidently the court below construed and applied them and, therefore, no error in law is apparent.

2. The second ground for reversal is that the exemption of the statute is absolute.

This may be conceded where the facts establish the right under the legislative plan but here, upon the facts, the Supreme Court has found that such right was not made out by the prosecutor below.

3. The final ground is that there was no waiver of exemption.

Under this ground it is urged that the payment of taxes for a period of years prior to 1922 and 1923 did not legally constitute a waiver of the right of exemption for the years in question and that the Supreme Court gave weight to that question.

As a legal proposition it may be conceded that payment of taxes in this manner does not work a waiver of the right of exemption as to future levies and assessments but it was not error for the court below to consider this as a factor to be used in weighing the other proofs in the case before it.

The judgment under review is affirmed, with costs.

*For affirmance*—THE CHIEF JUSTICE, PARKER, CAMPBELL, BODINE, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, KERNEY, JJ. 11.

*For reversal*—None.