STATE BOARD OF TAX APPEALS.

## TOWNSHIP OF SADDLE RIVER, PETITIONER, v. SLAVON-IAN CATHOLIC CHURCH OF THE ASSUMPTION OF PASSAIC, RESPONDENT.

Decided February 10, 1942.

For the petitioner, *Ralph W. Chandless.*

For the respondent, *Thomas J. Kennedy.*

QUINN, President. These proceedings involve two tracts of land in the petitioner taxing district, designated on its assessment tax map as Block 12A, Lot 1 and part of Block 12, Lot 1. These tracts were originally part of a single irregularly shaped tract, comprising approximately thirty-six acres, acquired by the respondent in 1903. The original tract contained an area of approximately 25 acres fronting on

Westminster Avenue, which, for the sake of clarity, we refer to as tract III, and a rear section of approximately 11 acres, westerly of tract III, and contiguous therewith to the extent only a line of about 125 feet. The said rear section was intersected in 1936 for State Highway No. 6, and the two segments resulting, are the parcels involved in this appeal, of which we shall designate the westerly part as tract I, and the easterly as tract II. It is tract II which adjoins tract III to the extent of 125 feet, as stated above. Tracts I and II are each roughly five and one-half acres in area. The question before us is whether these latter parcels were properly subject to taxation by the petitioner taxing district for the year 1940. Respondent asserts a right to exemption for the lands, as used for cemetery purposes. We are, of course, controlled by the situation which existed upon October 1st, 1939, the assessing date.

The case is before us upon appeal from a judgment of the Bergen County Board of Taxation, declining to grant a petition of the taxing district which had prayed for the setting aside by the board of an entry of exemption made for this property upon the tax list for the year 1940 by the township assessor. This procedure was clearly available under *R. S.* 54:3-21; *N. J. S. A.* 54:3-21. It is our duty to disregard any error by the assessor and to make a determination as to the taxability of the property upon the merits. *R. S.* 54:4-58, 54:4-59; *N. J. S. A.* 54:4-58, 59. *Ridgewood Elks Holding Co.* v. *Village of Ridgewood* (*Court of Errors and Appeals,* 1941), 127 *N. J. L.* 295; 22 *Atl. Rep.* (*2d*) 266.

Respondent seeks to justify the original entry of exemption as warranted under the terms of *R. S.* 54:4-3.9; *N. J. S. A.* 54:4-3.9, providing for exemption from taxation of cemeteries. Under cases construing that and related legislation exempting cemetery lands of associations organized under the Rural Cemetery Associations Act, the right to exemption of property alleged to constitute cemetery lands, depends upon whether the proof in the particular case shows a "plain indication that the property" is, as of the assessing date, "being actually used as a cemetery," or is "within reasonable contemplation" therefor. *West Ridgelawn Cemetery* v. *Clif-*

*ton (Court of Errors and Appeals, 1932), 109 N. J. L.* 146; 160 *Atl. Rep.* 534. A recital of the facts reflected by the testimony herein will make it apparent that the parcel under appeal was not in actual use as a cemetery, and that the problem before us is to determine whether it was plainly within reasonable contemplation therefor, upon the assessing date.

As stated above, this property, together with tract III, was acquired by the Church in 1903. Its then officiating priest testifies that the entire parcel was intended for, and consecrated to use for the burial of deceased persons of the Roman Catholic faith. However this may be, and we have no reason to doubt it, it is quite clear that the development of the cemetery, as such, was limited to the twenty-five acre tract III. Burials were made in this portion of the property only. These were at the rate of some 60 to 100 per year, so that on October 1st, 1939, there were in excess of 2,000 interments there. No interments had then been made in tracts I and II, and, as a matter of fact, that area was always wild and uncleared brush and swamp acreage, separated for many years past by a cyclone wire fence from the confines of the cemetery grounds in tract III. The original officiating clergyman of the church testified that no one was buried in that area, and it was never mapped for cemetery use, because it was wooded and swampy and "nobody wanted to go over there." It is thus obvious that, whatever may have been the original design for the acquisition of this property, that portion of it here in question was always in disuse, and respondent had clearly segregated and developed as its cemetery only tract III.

Respondent contends, however, that it never abandoned an original intention to devote the entire thirty-six acres to cemetery use, and in support of its position it points to the fact that it made two interments in tract I and three in tract II in August, 1940. It appears that these were paupers, and it is frankly conceded on behalf of respondent that these burials were made only after an assessment for taxation was entered thereon by the taxing district, and for the purpose of showing the township officials that it was intended ultimately to use this property for cemetery purposes. These

burials do not, in our opinion, serve to establish any right which respondent did not possess on October 1st, 1939. They were mere token interments, and not contemplated in October, 1939. As of the assessing date, there is no indication that respondent intended, within the reasonably anticipated future, to devote this property to cemetery uses. It is fairly clear that it did not require any more than the twenty-five acre tract for its own burial purposes. It had taken a space of thirty-six years to encompass some 2,000 odd interments. Respondent's family plots devote 120 square feet to four persons. At this rate, twenty-five acres of land will serve for 36,300 burials. Making all normal allowances for waste space, roads, walks, &c., it is obvious that respondent's legitimate needs, at its present rate of sixty interments a year, will not, in any reasonably foreseeable period, or for centuries, require the use of the property under appeal.

It is further urged, on behalf of the taxing district, that respondent could not have had the property under appeal within reasonable contemplation for cemetery uses upon the assessing date, since it did not possess the statutory municipal consent for the location or enlargement of a cemetery. Under *R. S.* 8:3-2; *N. J. S. A.* 8:3-2, originally enacted as *Pamph. L.* 1885, *ch.* 129, *p.* 166, and amended from time to time thereafter, it is, and was in 1903, when respondent purchased this land, unlawful to locate any new cemetery, or enlarge an existing one, without the consent and approval of the governing body of the municipality where same was situated. Applications for that purpose are required to be made in writing, accompanied by a map of the area to be used for cemetery purposes. It was testified that an examination of all of the minutes, ordinances and resolutions of the municipality since 1898 failed to indicate that consent for the operation of a cemetery was ever granted to respondent. Respondent offered no proof to the contrary, and the fact must therefore be regarded as established. It further appears that an ordinance of the township in 1932 revoked any outstanding unused cemetery permits. We have heretofore held, and the ruling is applicable here, that the lack of the requisite municipal consent militates against any expectation that a landowner could

reasonably entertain as to the potential future use of property for cemetery purposes. *City of Clifton* v. *East Ridgelawn Cemetery* (*New Jersey Tax Reports,* 1934-1939), 725; *Borough of Leonia* v. *Church of the Madonna, Id.* 779. This is especially true here in view of the evidence which is afforded by the 1932 ordinance, referred to above, of the fact that the grant of permits for cemetery use in the future is unlikely.

We are not to be understood as expressing any opinion herein as to the right of exemption of tract III, actually in use for cemetery purposes, or as to the effect thereon of the failure to obtain a permit. The only matter before us is the taxability, for the year 1940, of tracts I and II. Any neutralization of the failure to obtain a permit which it might be argued must result from thirty-six years of acquiescence by the municipality, could only apply to the portion of the property in actual cemetery use. If that contention could be sustained, then the property under appeal would clearly be in the category of lands intended for use in enlarging an existing cemetery, and we have seen that for such a purpose a municipal permit would be indispensable. These tracts we find, as a matter of fact, were regarded and treated by respondent as separate and distinct from tract III, were fenced off from its cemetery in tract III, were left wild and unimproved, and, upon the assessing date, were not within reasonably contemplated use by respondent for cemetery purposes, since tract III can serve its legitimate burial needs indefinitely. The exemption must be denied upon the authority of the principles set out in *Fairview Heights Cemetery Co.* v. *Fay* (*Supreme Court,* 1917), 90 *N. J. L.* 427; 101 *Atl. Rep.* 405.