FITTERER v. CRAWFORD, Collector, Appellant.

Division Two, June 12, 1900.

1. **Taxation:** EXEMPTIONS: CONSTRUCTION OF LAWS. Laws exempting property from taxation are to be strictly construed, and the claimant of such an exemption must establish his right beyond a reasonable doubt.

2. ——: ——: MASONIC LODGE. Under a statute (R. S. 1899, sec. 7504) exempting from taxation property "used exclusively for purposes purely charitable," *held*, that the property of a Masonic lodge is exempt, provided it be used exclusively for lodge purposes; but if only part of a building owned by such lodge is so used, the remainder being rented out, the exemption does not apply, and the building is liable to taxation, although the proceeds of the rents are applied solely to lodge purposes.

3. ———: INSTITUTIONS "PURELY CHARITABLE." Under the statute exempting from taxation property used exclusively for purposes purely charitable, it is held an institution may be used for purposes purely charitable by distributing alms to the poor, needy and the afflicted of certain sects or nationalities or to members of certain organizations, their widows and children.

4. ———: ———: MASONIC LODGE. A benevolent order whose purposes are to nurse, care for and provide for its sick, afflicted and needy members and their families, bury the dead, educate the orphan children of deceased members, and inculcate in its members the principles of morality, temperance, benevolence and charity, and teach them their duty and their true fraternal relations to mankind, and whose property is used exclusively for lodge purposes, is an institution "for purposes purely charitable." But if said lodge rents out for mercantile purposes the two lower stories of a building owned by it, in the third story of which its meetings are held, the whole of said building is taxable.

Appeal, from Grundy Circuit Court.—*Hon. P. C. Stepp,* Judge.

REVERSED.

*John W. Schooler, S. S. Kelso* and *S. C. Price* for appellant.

(1) The Constitution and statute exempting property from taxation are to be strictly construed against the claim of exemption. Washington University v. Rouse, 42 Mo. 323; State ex rel. v. Railroad, 89 Mo. 532; State ex rel. v. Railroad, 99 Mo. 42; State ex rel. v. Arnold, 136 Mo. 450; Scotland County v. Railroad, 65 Mo. 134; State ex rel. v. Lange, 16 Mo. App. 468; Wyman v. St. Louis, 17 Mo. 337; Railroad v. Cass Co., 53 Mo. 17; Cincinnati College v. The State, 19 Ohio 110; Redemptorist Fathers v. Boston, 129 Mass. 180; Portland Hibernian Society v. Kelly, 28 Ore. 173; Railroad v. Guffey, 120 U. S. 569; Bangor v. Masonic Lodge, 73 Me. 428; Co. Commissioners v. Sisters of Charity, 48 Md. 34; Theological Seminary v. The People ex rel., 101

Ill. 578; Mayor of Baltimore v. Grand Lodge, 60 Md. 280; 25 Am. and Eng. Ency. of Law, 157, and authorities cited in n. 3, p. 157, note 1, p. 158.    (2)    The plaintiff lodge should not be considered a charitable institution within the meaning of our Constitution and statute, exempting certain property from taxation "when used for purposes purely charitable."    (3)    The first story of the building involved in this case is a store room for rent; the second story is divided into offices which are rented to tenants, and the third floor is used by the plaintiff lodge, for lodge room and ante-rooms in connection therewith, which lodge and ante-rooms are used as a meeting place for the lodge.    It is too plain to admit of any sort of contention that the first and second stories are not used for charitable purposes.    They are used as any other business building is used in the city of Trenton. In such cases the building is not exempt.    St. Marys School v. Crowl, 10 Kan. 333; Vail v. Beach, 10 Kan. 166; Washburn College v. Commissioners, 8 Kan. 344; Commissioners v. Sisters of Charity, 48 Md. 34; Appeal Tax Court v. Baltimore Academy, 50 Md. 437; People v. Graceland Cemetery, 86 Ill. 336; Seminary v. The People ex rel., 101 Ill. 578; Des Moines Lodge v. County of Polk, 56 Ia. 34; Wayland v. St. Louis, 17 Mo. 335.    (4)    The application of the proceeds of property to a purpose purely charitable within the meaning of our statute, would not meet the requirement that the property itself shall be used exclusively for purposes purely charitable as a condition of its exemption from taxation. Literary Ass'n v. Pelton, 36 Oh. St. 253; Portland Hibernian Society v. Kelly, 28 Or. 173; Cincinnati College v. State, 19 Oh. 110; Trustees v. Boston, 120 Mass. 212.

*Hall & Hall* for respondents.

(1)    The respondent lodge is a charitable institution. State ex rel. v. Powers, 10 Mo. App. 263; Bishop Residence

Co. v. Hudson, 91 Mo. 671; Missouri Historical Society v. Academy of Science, Lucas et al., 94 Mo. 459; Ould v. Washington Hospital, 95 U. S. 303; Duke v. Fuller, 9 N. H. 536; Philadelphia v. Masonic Home, 160 Pa. St. 372; Fire Insurance Patrol v. Bogel, 120 Pa. St. 504. (2) It is a charitable institution within the meaning of the law exempting property of charitable institutions from taxation, though it limits its benefits to its own members and their families. Hibernian Benevolent Society v. Kelly, 28 Or. 173; Burd Orphan Asylum v. School Dist., 90 Pa. St. 21; Savannah v. Solomon Lodge, 53 Ga. 93; Indianapolis v. Grand Master, 25 Ind. 518; State v. Board of Assessors, 34 La. 574; State v. Addison, 2 S. C. 499; Petersburg v. Petersburg Ben. Ass'n, 78 Va. 431. (3) Its building and ground are exempt from taxation under the Constitution and statutes of the State of Missouri. Constitution, art. X, sec. 6; R. S. 1889, sec. 7504. (4) The fact that respondent lodge rents a part of its building and uses the rents for the purposes of the lodge does not render its property subject to taxation. State ex rel. v. Powers, 10 Mo. App. 263; s. c., 74 Mo. 476; Gymnastic Society v. Hudson, 12 Mo. App. 342; s. c., 85 Mo. 32; Cooper Hospital v. Burdsall (N. J.), 42 Atl. Rep. 853; The City of Henderson v. Strangers Rest Lodge, 17 S. W. Rep. (Ky.) 213; County of Henepin v. Brotherhood of Gethsemane, 27 Minn. 460; Book Agents v. Hinton County Trustee, 21 S. W. Rep. 321; Boys' School v. Gill, 145 Mass. 139.

BURGESS, J.—This is an injunction proceeding by which the plaintiffs, John Fitterer, William P. Lafferty and Chas. H. Cook, trustees of Trenton Lodge No. 111 of Ancient Free and Accepted Masons, seek to enjoin and restrain the collection of $55.50 taxes levied by the county court of Grundy county, in 1897, for state, county, township, school

and other taxes, against the property of said lodge, including its lodge building, which property is alleged to be used for purposes purely charitable.

A preliminary injunction was granted, which upon final hearing was made perpetual.   Defendant appeals.

The case was tried upon the following agreed state of facts:

"For the purposes of the trial of the above cause, it is agreed that the facts which shall be taken and considered as the evidence in the case are as follows, viz.:

"That plaintiffs, John Fitterer, William P. Lafferty and Chas. H. Cook, are the duly elected and qualified trustees and agents of Trenton Lodge No. 111 of Ancient Free and Accepted Masons, and as such trustees have the control and management of and hold the legal title to the property and effects of said lodge and its members in trust for the use, benefit, occupancy and enjoyment of the officers and members of said lodge.

"The objects and purposes of said order are to nurse, care for and provide for its sick, afflicted and needy members and their families, bury the dead, care for the widows of its deceased members and care for and educate their orphan children, and to inculcate in its members the principles of morality, temperance, benevolence and charity and teach them their duty and true fraternal relation to mankind.

"Its revenue is provided by membership fees paid by persons joining the order, dues by its members, and rents as hereinafter stated.   Each member of the order, not exempt, is required by its laws to pay as regular dues three dollars per annum.

"The worshipful master, senior and junior wardens are the committee of the lodge on charity and the trustees of the lodge, and as such committee are authorized to draw from the funds of the lodge, by an order from the worship-

ful master, any sum not exceeding ten dollars for the relief of any one object at one time.

"Except as above the individual members of said lodge are not entitled to receive any pecuniary benefits from the lodge, and in no case are they entitled to receive, directly or indirectly, any benefit, profit or private gain from said lodge or in any manner participate in the distribution of the funds or property of the lodge.

"John Fitterer, William P. Lafferty and Chas. H. Cook, as such trustees for said lodge, have and hold the legal title of the following described real estate in Grundy county, Missouri, to-wit: A part of lots four and five in block seventeen of the original town (now city) of Trenton, described by metes and bounds as follows, to-wit: Commencing at a point on Water street fifty feet eight inches southwest from the northeast corner of said block at the intersection of Water street and College avenue, running thence southwesterly along the northwest side of Water street thirty-two feet and eight inches, thence northwesterly through said lot four on a line parallel with the side lines of said block of the alley, thence northeasterly along the line of said alley thirty-two feet and eight inches, thence southeasterly through said lot five parallel with the side lines of said lot five to the place of beginning. Upon which is erected a three-story brick building. The first story of which is a store room and is rented, the second story is also rented, the third story is used and occupied by the members of said lodge as a lodge room and ante-rooms used in connection therewith.

"The rents received from the portions of the building rented are paid into the treasury of the lodge.

"The lodge borrowed about $9,500 at eight per cent interest per annum, which is secured by deed of trust on

said property, which was used in the construction of said building.

"The rents secured from the building are paid to the treasurer of said lodge, and are used in connection with the other revenue of the lodge, for the purposes of the lodge as above provided, and in paying the interest and principal on said debt. No part of said rents can be paid or used in any manner for the private gain or profit of the members of the lodge, but after the payment of said debt and interest must be kept and used as the other funds of said lodge, and any division or distribution of said rents or any other funds or property of said lodge among its members would be in direct violation of its laws and of the obligation taken by its members.

"The above described real estate belonging to the plaintiffs was regularly assessed for taxation by the legally elected and duly qualified township assessor of Trenton township, Grundy county, Missouri, for the taxes for the year 1897. And the assessor's book was duly made out by the township assessor of said township and returned to the county court of said Grundy county, Missouri. Said county court levied the proper taxes due the different funds for the State, county and township funds against said property; and by order of said county court the county clerk of said county made out and extended said taxes mentioned in the plaintiff's petition against said property in a tax book in the manner and within the time prescribed by law. Said clerk delivered said tax book to the defendant, who is the legally elected and duly qualified township collector of Trenton township, in Grundy county, Missouri, and defendant now has possession of said tax books and is proceeding to collect, and will, unless prevented, collect said taxes so charged and extended against said property in said tax book as alleged in plaintiffs' petition. And said property is liable for said taxes unless the

same is exempt from taxation under the Constitution and statutes of the State of Missouri."

The only questions involved in this appeal are whether or not the property in question is exempt from taxation under section 6, article 10, of the State Constitution, and by the provisions of section 7504, Revised Statutes 1889, which exempts lots in incorporated cities and towns not exceeding one acre, with the buildings, thereon, from taxation, when the same are used exclusively for purposes purely charitable.

While the Constitution in express terms exempts from taxation the property of the State, counties and other municipal corporations, and cemeteries, it does not do so with respect to property "used exclusively for purposes purely charitable," but says that such property may be exempted from taxation, and the legislature in accordance therewith has provided that property so used, shall be exempted from taxation for state, county, or local purposes. [Sec. 7504, *supra*.]

In the construction of laws exempting property from taxation it is a cardinal principle that they must be strictly construed. As a rule all property is liable to taxation, exemption the exception, and it devolves upon the person claiming that any specific property is exempt to show it beyond a reasonable doubt.

"It is in no case to be assumed that the law intends to release any particular property from this obligation; and no such exemption can be allowed, except upon clear and unequivocal proof that such release is required by the terms of the statute. If any doubt arises as to the exemption claimed it must operate most strongly against the party claiming the exemption." [Redemptorist Fathers v. Boston, 129 Mass. loc. cit. 180.]

In Bangor v. Masonic Lodge, 73 Maine loc. cit. 432, it is said: "The just and honest rule in assessments for govern-

mental purposes is equality of taxation. . Whatever sacrifices it requires from the people should be made to bear as nearly as possible with the same pressure upon all. In this way only will there be the least sacrifice by all. If one bears less than his share of the public burdens, some other must bear more. If one block of stores remains untaxed, the remaining stores and other taxable property must be unduly and disproportionately taxed. The more numerous the exemptions, the more unequal and burdensome the taxation."

Governed by these principles are the provisions of the Constitution and statute of the State so plain and unambiguous, as to exempt the property in question from taxation?

It is generally held by the courts of last resort in States whose constitutions exempt from taxation institutions of "purely public charity" that charitable or benevolent associations whose acts of charity are restricted to their own sick and needy members, and their families, and the widows and orphans of their members, are not institutions of purely public charity, and that the property of such institutions is not exempt from taxation because such a charity is not a public charity. [Philadelphia v. Masonic Home, 160 Pa. St. 572; Morning Star Lodge v. Hayslip, 23 Ohio St. 144; Bangor v. Masonic Lodge, 73 Me. 428; Swifts Executors v. Beneficial Society of Easton, 73 Pa. St. 362; Delaware Co. Institute of Science v. Delaware Co., 94 Pa. St. 163; Donohugh v. Library Co., 86 Pa. St. 306; Mitchell v. Treasurer of Franklin Co., 25 Ohio St. 144; Babb v. Reed, 5 Rawle 151; Burd Orphan Asylum v. School District of Upper Darby, 90 Pa. St. 21; Young Men's Protestant, etc., Society v. Fall River, 160 Mass. 409; Hennepin Co. v. Brotherhood of Gethsemane, 27 Minn. 460; City of Newport v. Masonic Temple Ass'n, 56 S. W. Rep. 405.] But there is a very material difference between what is denominated a public charity, and

what is meant by the words "used for purposes purely charitable." In Delaware Co. Institute of Science v. Delaware Co., *supra*, it is said that "no corporation or institution is a purely public charity, which is not under the control or supervision of the public authorities; or, at least, subject to public visitation; or, is founded and endowed so as to give the general public, under reasonable restrictions, an absolute right to receive its benefits, and, in case of failure of its managers to carry out the founder's will, to compel compliance therewith by an application to the court. In case of a dissolution of such a charity, its property must vest in the public authorities for charitable uses."

An institution may be used for purposes "purely charitable" by distributing alms to the poor, needy and the afflicted of certain sects, or nationalities, or the members of certain organizations, their widows, and children.

By the statute of the State of Georgia all poor houses, alms houses, houses of industry, and any house belonging to any charitable institution, are declared to be exempt from taxation and it was held in the case of the Mayor of Savannah v. Solomon's Lodge, 53 Ga. 93, that a Masonic lodge, being a charitable institution, was exempt from taxation under the statute.

Indianapolis v. The Grand Master of the Grand Lodge, 25 Ind. 518, was a suit to enjoin the collection of taxes assessed upon a building commonly known as Masonic Hall. The complaint alleged that the grand master, etc., was a benevolent corporation; that the building was used for purposes of universal benevolence and charity.

The statute provides that "every building erected for the use of any benevolent or charitable institution, etc., and the tract of land on which such building is situate" shall be exempt from taxation. It was held that the allegations made a case entitling the property to exemption under the

statute, and that in limiting the dispensation of its blessings to members of the lodge, did not deprive it of the character of a charitable institution.

In State ex rel. Bertel v. Board of Assessors, 34 La. Ann. 574, it is held that Masonic societies are charitable institutions, within the meaning of the Constitution of that State, and exempts from taxation property owned and used for their corporate purpose, but that property of such an institution when leased or used for corporate income will not be entitled to the exemption.

So in Petersburg v. Petersburg Ben. Ass'n, 78 Va. 431, it was held under the laws of that State, exempting from taxation property, owned by benevolent associations and applied wholly to paying its current expenses, the assistance of its indigent members, and the families of such as have died in need, that these are charitable purposes, and that it is not essential that they shall be universal.

In Book Agents of the Methodist Episcopal Church South v. Hinton, 92 Tenn. 188, it was held that property of an incorporated publishing house, used in conducting its business, was exempt from taxation under the constitution and statutes of the State exempting property from taxation when used for purposes purely or exclusively for religious, charitable, scientific or educational purposes, where the corporation was placed by its charter under the control of a corporation or religious society or denomination, whose discipline provided that the entire net earnings arising from the business of the corporation, consisting mainly of the publication and distribution of religious literature, should be applied exclusively to the benefit of the traveling, supernumerary, superannuated, and worn out preachers of such religious denomination, their wives, widows, and children.

And in Hibernian Ben. Society v. Kelly, 28 Oregon 173, it is held by the Supreme Court of Oregon, that to constitute a benevolent corporation a "charitable" institu-

tion, within the meaning of the constitution and statutes of
that State exempting from taxation certain property of
"charitable" institutions, it is not necessary that the benefits
be extended to needy persons generally without regard to the
relation the recipient may bear to the society or to dues or
fees paid; but it is still "charitable" though it restricts its
benefactions to its own members and their families.

The agreed statement of facts shows that:   The objects
and purposes of said order are to nurse, care for and provide
for its sick, afflicted and needy members and their families,
bury the dead, care for the widows of its deceased members,
and care for and educate their orphan children, and to in-
culcate in its members the principles of morality, temperance,
benevolence and charity, and teach them their duty and true
fraternal relation to mankind.   Its revenue is provided by
membership fees paid by persons joining the order, dues by
its members, and rents as before stated.   Each member of
the order, not exempt, is required by its 'laws to pay as
regular dues three dollars per annum.

The worshipful master, senior and junior wardens are
the committee of the lodge on charity and the trustees of
the lodge, and as such committee are authorized to draw
from the funds of the lodge, by an order from the worship-
ful master, any sum not exceeding ten dollars for the relief
of any one object at one time.

Except as above the individual members of said lodge
are not entitled to receive any pecuniary benefits from the
lodge, and in no case are they entitled to receive, directly, or
indirectly, any benefit, profit or private gain from said lodge
or in any manner participate in the distribution of the funds
or property of the lodge.   The lodge is wholly without
profit or gain, which shows that it is purely a charity.
[Philadelphia v. Masonic Home, supra.]   And that it is

·charitable to its own members and their families is not to be questioned. [Bangor v. Masonic Lodge, *supra*.]

Our conclusion is that Masonic lodges are organized for charitable and benevolent purposes, with no incentive to private or corporate gain, but whose revenues derived from whatever source they may be, are applied to the payment of their current expenses, and the relief of their afflicted and needy members and their families, and although their charity is restricted to such use they are charitable institutions.

But in order that the property in question shall be exempt from taxation, it must under the statute have been "used exclusively for purposes purely charitable."

The building erected upon the ground is three stories high.

The first story is rented and used for a store room. The second story is also rented. The third story is used and occupied by the members of said lodge as a lodge room, and ante-rooms in connection therewith. The rents received from the building are used in the liquidation of a debt incurred by the lodge in constructing the building and for no other purpose.

It is upon the condition that the property is "used exclusively for purely charitable purposes," that it is exempted from taxation. It must be remembered that it is not exempted from taxation simply because it belongs to the Masonic lodge, but because of its exclusive use by the lodge for charitable purposes. Now as to the third story there can be no question as to its use for such purposes, but as to the other stories, and the ground, they are not so used. And being parts of the same building, and belonging to the same party, it could not be parceled out, and thus assessed and taxed, so as to bring that part of it, "used exclusively for charitable purposes" within that provision of the statute which exempts such property from taxation. Nor do we think that merely applying the rents received from the first

and second stories to the extinguishment of the debt incurred in the construction of the Masonic lodge building, is "using the building exclusively for purely charitable purposes," within the meaning of the statute. There is a very material difference between the "use of a building exclusively for purely charitable purposes," and renting it out, and then applying the proceeds arising therefrom to such purposes. To rent out a building is not to use it within the meaning of the statute, but in order to use it, it must be occupied or made use of. Moreover, by leasing the property the lodge becomes the competitor of all persons having property to rent for similar purposes, and the plain and obvious meaning of the statute is that such property shall not be exempt from taxation.

It is true that it was held in Mayor of Savannah v. Solomon's Lodge, *supra*, that the exemption of a Masonic lodge from taxation extended to any houses belonging to it, but that ruling was under a statute which provided that "all poor houses, alms houses, houses of industry, and any house belonging to any charitable institution" should be exempt from taxation and is wholly unlike our statute, hence not in point in the case in hand.

So in the case of the Petersburg v. Petersburg Ben. Ass'n, *supra*, it was held under a statute which provides that real estate owned by Masonic, Odd Fellows, and other like benevolent associations, when the proceeds arising from said property are devoted exclusively to charitable or school purposes, shall be exempt from taxation, carried with it the exemption of such proceeds however acquired when applied as required by the statute. But this decision is in accordance with the plain letter of the statute, which is unlike ours.

In the case of Indianapolis v. Grand Master of the Grand Lodge, *supra*, it was held that the use of parts of a

building by lessees for concerts and mercantile purposes, is not a use by a charitable institution within the meaning of the statute, though the rents derived therefrom are devoted to charitable uses. [Wyman v. St. Louis, 17 Mo. 335.]

In the case of Hibernian Society v. Kelly, *supra*, under the provisions of the statutes of that State which provides that "such real estate belonging to charitable institutions as shall be actually occupied for the purposes for which they were, incorporated," shall be exempt from taxation, it was held that a building owned by a charitable institution, only part of which is occupied for the purposes of the institution, is not exempt, though the revenues derived from the use of the remainder of the building are devoted to the objects of the institution; that the test of the exemption is the use of the property itself, and not the application of the income derived from it.

Our opinion is that the property, "was not used for purely charitable purposes," and therefore not exempt from taxation, and that the injunction was improperly granted.

The judgment is reversed. *Gantt, P. J.*, and *Sherwood, J.*, concur.