Plaintiffs (appellants), Young Women's Christian Association and the trustees of said Association, filed a bill in equity against defendant (respondent), Collector of the City of St. Louis, seeking to enjoin him from attempting to collect taxes levied in the years 1932 to 1935, inclusive, on real estate owned by appellants, and to remove a cloud on the title to said property created by the tax lien. The decree was adverse to plaintiffs and they have appealed.
Appellants claim that the property is exempt from taxes under the provisions of Article X, Section 6, of the Missouri Constitution, and Section 9743, Revised Statutes 1929 (Mo. Stat. Ann., p. 7863).
The Constitution provides that "lots in incorporated cities . . ., to the extent of one acre, . . . with the buildings thereon,may be exempted from taxation, when the same are used exclusively for religious worship, for schools, or for purposes purely charitable." The statute says that such property shall
be exempted.
The question here is whether the property was used exclusively for the purposes aforesaid during the years above mentioned.
The Association was incorporated in 1905 by pro forma decree of the circuit court under the provisions of what is now Article X, Chapter 32, Revised Statutes 1929 (Mo. Stat. Ann., p. 2288), relating to nonprofit associations formed for benevolent, religious, educational and other purposes. *Page 901 
The purpose of the Association, stated in the original charter, is "to stimulate interest in the religious development of young women in the city and vicinity, and to improve intellectual, social and physical conditions for them by means of the association of young women," etc.
There is no serious controversy as to the facts which we summarize as follows:
About the year 1911 the Association erected a building on a lot owned by it at 1411 Locust Street in St. Louis. The lot is 100 feet by 165 feet in extent. The building entirely covers the lot and consists of five stories and a basement. In this building the general activities of the Association are conducted and no part of the building is rented or leased for commercial purposes, except that in 1932 and 1933 some rooms were rented for temporary lodging. There were 24 bedrooms which were rented for a small charge to women transients until they could find another place to stay. The rooms were also used to care for destitute girls without funds.
The Association is supported chiefly by donations. No officer or director receives any compensation, except there is a paid secretary, assistants and instructors, numbering about twenty women, and, of course, those employed in maintaining the building, operating the elevators, etc., receive wages. In general, the work of the Association is achieved by individual consultation with girls on spiritual, physical or economic problems. Several thousand girls annually ask aid in securing employment and work is found for many. Temporary lodging, food and sometimes financial help is given to destitute girls without charge. Girls are formed into clubs and training given for various types or work. The girls meet for instruction and social enjoyment. Sometimes meals are served at cost, prepared by girls training for cooking or waitress work. Religious programs and devotional services are held, also classes in English, music, art and clerical work. If an instructor is paid, a fee is charged, otherwise not. There is a swimming pool, gymnasium, sun lamps, etc., and a small charge is made for the use of them. Instruction is given in swimming, dancing, fencing and other sports. In 1932 a cafeteria was conducted, but discontinued early in 1933. Late in 1933 a lunch club was formed to serve noonday luncheons to members and their guests, about one hundred per day being served. No advertisements, either in newspapers or on the outside of the building, indicated that lunches or food might be had. Charges for meals and for other services, where charges were made, seem to have been fixed on a basis to cover the cost. During the years under consideration, 1932 to 1935, inclusive, in one way or another, between 35,000 and 40,000 girls annually used the facilities of the Association.
Before discussing the law applicable to the facts above set forth, it may be well to state that the Association in the instant case is a separate *Page 902 
and distinct organization from the Young Men's Christian Association mentioned in some of the cases hereafter considered.
[1] The principles to be followed in construing provisions for exemption from taxation, have been announced in many cases. They are well stated by Judge LAMM in State ex rel. v. Johnston,214 Mo. 656, 113 S.W. 1083. Suffice it to say they call for a strict construction against the right of exemption. Taxation is the rule, exemption is the exception; yet strict construction must be a reasonable construction.
Respondent contends that, under the proven facts, the Association has not used its building exclusively for "religious worship, for schools, or for purposes purely charitable," and cites the following cases: State ex rel. v. Y.M.C.A.,259 Mo. 233, 168 S.W. 589; State ex rel. Y.M.C.A. v. Gehner,320 Mo. 1172, 11 S.W.2d 33; State ex rel. Y.M.C.A. v. Gehner,329 Mo. 1007, 47 S.W.2d 776; Y.M.C.A. v. City of Philadelphia ( Pa. Sup.), 187 A. 204; Y.M.C.A. v. Lancaster, 106 Neb. 105, 182 N.W. 593; B.P.O.E. v. Koeln, 262 Mo. 444, 171 S.W. 329; Fitterer v. Crawford, 157 Mo. 51, 57 S.W. 532; K. of P. v. Crawford,157 Mo. 356, 57 S.W. 1020; Odd Fellows v. Crawford, 157 Mo. 41, 57 S.W. 1134; Washington U. v. Baumann, 341 Mo. 708,108 S.W.2d 403; State ex rel. v. Powers, 10 Mo. App. 263, affirmed74 Mo. 476; State ex rel. v. Academy of Science, 13 Mo. App. 213; Bishop's Residence v. Hudson, 91 Mo. 671, 4 S.W. 435.
The first five cases cited by respondent involve the question of exemption from taxation of property owned by the Young Men's Christian Association, the first three being decisions of this court and the next two being decisions of the Supreme Courts of Pennsylvania and Nebraska, respectively. The facts in each of those cases differ materially from the facts in the instant case. In the first case (259 Mo. 233, 168 S.W. 589) the proof showed that a portion of the Association's building was leased to others for commercial purposes. We denied exemption because the property itself was not used "exclusively" for educational and religious purposes and further held that it was immaterial that the income from the property was so used. In the other two Y.M.C.A. cases decided by us (320 Mo. 1172, 11 S.W.2d 30, and 329 Mo. 1007,47 S.W.2d 776) the facts are set out in detail and are substantially the same in each case except that in the latter the facilities of the Association were confined to its members. The facts were that the Association was using its property to conduct hotels, rooming houses, cafeterias and various other forms of commercial enterprises. We held in one case that these uses were not exclusively religious, educational or charitable and in the last case that they were not exclusively charitable. Respondent says that these uses are the same as shown by the proof in the instant case, and that the difference is only in degree. We think respondent fails to note certain important differences which we will later attempt to point out. *Page 903 
In both the Pennsylvania and Nebraska Y.M.C.A. cases, supra, a portion of the property was rented to others for commercial purposes, and those courts held that the Association was not using its property for purposes purely charitable. A casual reading of the case of B.P.O.E. v. Koeln, supra, will show that it is entirely unlike the present case. In each of the three cases above cited from 157 Mo., a portion of the lodge property was rented to others for commercial purposes. Washington U. v. Baumann, supra, is cited by both parties in the instant case, but we think it affords little, if any, support to the contentions of either. The question there was the effect of a legislative charter granted prior to our present Constitution and by the terms of which charter all the property of the school was exempted from taxation. In State ex rel. v. Powers, supra, the building of a religious order was used entirely as a hospital, mostly for charity patients, but some pay patients were received and the income used for the support of the hospital. The Court of Appeals held, and we approved, that the property was exempt. We regard the decision as opposed to respondent's contention. The same is true of Bishop's Residence v. Hudson, supra, wherein it was held the bishop's residence was exempt as being used for religious purposes. State ex rel. v. Academy of Science, has little bearing on the question now under consideration except that it gives a very broad meaning to the term "charity" and to that extent is unfavorable to respondent.
Appellant has cited a number of cases, some of which illuminate the object of our search. In State ex rel. v. Johnston, supra, an attempt was made to tax the property of Kemper Military Academy, a private boarding school; it being claimed that residence of the proprietor and his family in one of the school buildings destroyed the exclusive character of the building as a school. We held the property exempt. Judge LAMM, in writing the opinion, approved the following language:
"The phrase `exclusively used' has reference to the primary and inherent use as over against a mere secondary and incidental use. [People ex rel. v. Lawler, 77 N.Y. Supp. l.c. 842, et seq.] If the incidental use (in this instance residing in the building) does not interrupt the exclusive occupation of the building for school purposes, but dovetails into or rounds out those purposes, then there could fairly be said to be left an exclusive use in the school on which the law lays hold. [First Unitarian Society v. Hartford, 66 Conn. l.c. 375.]"
Respondent says the language above quoted conflicts with our language in one of the Y.M.C.A. cases above mentioned (259 Mo. 233, l.c. 238, 168 S.W. 589) wherein we say:
"However much we may sympathize with the exalted purposes of defendant, the words `dominant use' or `principal use' cannot be substituted for the words `used exclusively' without doing violence to a document which we have sworn to support and uphold." *Page 904 
Both cases were ruled correctly on the facts and the conflict is more seeming than real. In the one case residence of the proprietor and his family in the school building was an "incidental" part of the "primary" purpose, to-wit, the act of conducting the school. Such residence was not even a necessary part, but one that so "dovetails into or rounds out those purposes" as not to destroy the "exclusive" character of the use. In the other case the rental of a portion of the building for commercial purposes was not "incident to or a part of" the use for religious, educational or charitable purposes. It may have been a "secondary" use, in that only a small part of the building was so used, but it was a different use, not incidental to the main use, and thus the "exclusive" character was destroyed. Of course, we must be careful that the exemption be not enlarged beyond reasonable implications.
[2] In respondent's brief much argument is used as to whether appellant's property was devoted exclusively to purely charitable purposes, but, it must be borne in mind, that the law is satisfied if the uses be either charitable, religious or educational, and the same use may partake of more than one of these purposes. A large part of the activities of the Association clearly falls within one or another of the exempted purposes. Some may argue that the teaching of swimming, dancing, etc., is not a reasonable incident to or part of education, but it is not for us to write our personal views into law. Such things are generally taught in our schools and have come to be a recognized part of our system of education. It makes no difference that fees are paid for such services, or that the recipients of such service pay for lodging, for the exemption applies to pay schools or boarding schools as well as free schools. We find no difficulty as to the charges for meals prepared by girls in training for cooking and waitress work. This was an incident to and a part of such training. [3] The most serious question arises as to the cafeteria conducted in 1932, yet we have concluded that it did not destroy the "exclusiveness" of the use even for that year. It was not a competitive commercial use. We do not base our conclusion upon that reason, but rather take the ground that the conduct of the cafeteria was an incident to and part of both the educational and religious activities of the Association. Both schools and churches frequently serve food, not as a matter of charity, but as a part of their chief purpose in drawing into closer communion and fellowship those whom they would serve.
Every portion of the property under consideration was used by the Association itself, and used for the very praise-worthy purposes for which it was organized. We hold that the uses proved are reasonably within the terms of the Constitution and statute and that the property is not taxable.
In the Y.M.C.A. cases the proof showed that, while the entire *Page 905 income of that institution was used for the worthy purposes for which it was organized, its property was not so used, but a part thereof was rented to others and used for purposes not incident to nor part of religion, charity or education. Therein lies the distinction between those cases and this.
This cause should be and is reversed and remanded with directions to enter a decree canceling the tax bills in question and permanently enjoining and restraining respondent (defendant) from attempting to collect such taxes. All concur, except Hays,J., absent.