MISSOURI GOODWILL INDUSTRIES an Eleemosynary Corporation, and LOUIS J. COHEN and H. H. SCHWARTZ, a Partnership, Doing Business as LOU COHEN & CO., and ROBERT M. CLOSE, CHARLES H. CLOSE, JR., and JOHN W. CLOSE, a Partnership, Doing Business as the AQUART MANUFACTURING COMPANY, and GEORGE B. LOMBARDO and HAZEL L. LOMBARDO, His Wife, Intervenors on Behalf of Plaintiff v. R. E. GRUNER, Collector of the City of St. Louis, Missouri; and THE CITY OF ST. LOUIS, a Municipal Corporation, and BOARD OF EDUCATION OF THE CITY OF ST. LOUIS, Intervenors on Behalf of Defendants, Appellants.—No. 40509.—210 S. W. (2d) 38.

Division One, March 8, 1948.

Rehearing Denied, April 12, 1948.

*Alfred L. Grattendick* for R. E. Gruner, *Emmet T. Carter* for Board of Education, *George L. Stemmler, John P. McCammon* and *Frank A. Neun* for City of St. Louis, appellants.

648

*Albert E. Hausman* for respondents.

[38] CLARK, J.—Respondents obtained a decree in the Circuit Court of the City of St. Louis enjoining collection of tax bills for the years 1941 to 1945, inclusive, on seven parcels of real estate in St. Louis, on the ground that the property was "used exclusively for purposes purely charitable." Five of the parcels had been sold by Missouri Goodwill Industries prior to the trial and the purchasers joined as intervening plaintiffs. Appellants, defendants below, are the City of St. Louis, its Collector and its Board of Education.

[39] Missouri Goodwill Industries, Inc., hereafter called Goodwill, is one of ninety-eight similar institutions operating in the United States and Canada. It began under the auspices of the Methodist Church and to a limited extent is supervised by a Board of that church, but is governed by a board of directors which contain a Jewish Rabbi, Roman Catholics, Presbyterians and others. It is incorporated under our statutes relating to benevolent, etc., institutions and its charter purposes are: "For benevolent and educational purposes, for the industrial, moral and ethical training of the poor and neglected; the encouragement of thrift and healthful conditions of living and labor; the prevention of pauperism and the relief of the temporary distresses of the unfortunate." It cannot issue stock or pay dividends.

The real estate owned by Goodwill during 1941, 1945, was: parcel No. 1, a small building equipped with machinery for shredding and baling paper; parcel No. 2, a brick garage used to house Goodwill trucks; parcels 3 and 4, connected buildings operated by Goodwill as a retail store and containing its general offices; parcels 5, 6, and 7, adjoining buildings, operated as a factory.

Goodwill operates as follows: it sends out trucks and gathers donations of discarded clothing, waste paper, books and other articles. These are brought to the factory, sterilized, repaired, reconditioned and sold in the retail store above mentioned and in three other stores in buildings which Goodwill rents. It deals only in second hand goods except that some new material is purchased for use in making repairs. Its employees, except the headquarters staff, truck drivers and some instructors, are physically or mentally handicapped persons who are unable to secure employment in regular industry. For the most part these persons are referred to Goodwill by churches

or charitable organizations. A new employee, after being interviewed, is started and trained in work to which he or she seems adaptable. The employee is paid some wages from the start and wages are increased as proficiency increases. When the employee becomes sufficiently adept he or she is helped to secure employment in regular industry. From 100 to 125 of these persons are employed and the annual "turnover" is about three times the average number of persons employed. Those who are so handicapped as to be precluded from obtaining other employment are retained in the "sheltered workshop" and paid a sufficient amount "to enable them to live."

Goodwill employs a full time chaplain and some free medical service is furnished the employees by a physician.

The testimony indicates that the total receipts of Goodwill for the years considered ranged from about $100,000.00 to $200,000.00 per annum and that its payroll ranged from about .$80,000.00 to about $125,000.00. Appellants set out a table in their brief in an attempt to show that a large operating profit is made. Respondents attack the accuracy of this table and offer figures to show a large operating loss. The evidence shows that Goodwill is allotted a substantial amount annually from the Community Chest. Appellants also point to testimony showing a large increase in Goodwill's total assets, but it seems that one building of the value of $30,000.00 was donated to it and another was purchased after 1945 for $200,000.00 although actually worth nearly three times that sum.

We agree with appellants that claims for exemption from taxation must be strictly, but reasonably, construed. We also agree that the purposes stated in a corporate charter, while important, are not conclusive; and that if part of the land is used for non-charitable purposes the whole is taxable. But, we think, the evidence in this case shows that all the real estate was exclusively used by Goodwill for the purposes expressed in its charter. The decisive question is: Are those purposes, as carried out by Goodwill, purely charitable?

Section 10937, Revised Statutes Missouri 1939, [Mo. R. S. A.] under authority of Article X, Section 6 of the Missouri Constitution of 1875, which statute and constitution were in force at the time these taxes were levied, provides that "lots in incorporated cities . . . with the buildings thereon, when same are used exclusively for . . . purposes purely charitable, shall be exempted from taxation."

[40] Appellants contend and cite decisions to show that the purposes of Goodwill do not come within the legal definition of "charitable;" and, specifically, that these purposes were not purely charitable because Goodwill's property was used in business or commerce. Evangelical Lutheran Synod v. Hoehn, 355 Mo. 257, 196 S. W. (2d) 134, has some but not all the aspects of the instant case. In that case we denied tax exemption to a publishing corporation, organized as a subsidiary of the Lutheran Church, which did an ex-

tensive business in competition with commercial printing houses. The opinion says: "A competitive commercial business operated for profit does not comply with that requirement, [purely charitable purposes] even though the profits are devoted to religion." We think that case was properly ruled, but it differs in important respects from the instant case. There the business was managed and operated in the same manner as any commercial enterprise for profit. True, the profits were turned over to the parent church corporation to be devoted to religious and charitable uses, but the primary purpose of the publishing company was to make profits, while the primary purpose of Goodwill is not to make profits, but to assist handicapped men and women to become self-respecting and self-supporting.

Fitterer v. Crawford, 157 Mo. 51, 57 S. W. 532, holds that a Masonic lodge building, two floors of which were rented to others, was taxable. To the same effect is Adelphia Lodge v. Crawford, 157 Mo. 356, 57 S. W. 1020. St. Louis Lodge v. Koeln, 262 Mo. 444, 171 S. W. 329, holds that a lodge building used as a club for members and their guests is taxable. Y. M. C. A. v. City of Philadelphia, 323 Pa. St. 401, 187 Atl. 204, denied tax exemption to the Y. M. C. A. because its building containing lodging facilities was primarily commercial in character. We came to the opposite conclusion in Salvation Army v. Hoehn, 354 Mo. 107, 188 S. W. (2d) 826. In that case, cited by both parties in the instant case, we held non-taxable a building operated as a hotel by the Salvation Army for women of low income. We reviewed many of our prior decisions and adopted a broader concept of the term "charity" than that now urged upon us by appellants. We said:

"The rule of strict construction in the matter of exemption from taxation is not questioned, but 'strict construction must be reasonable construction.' Y. W. C. A. v. Baumann, 344 Mo. 898, 1. c. 902, 130 S. W. (2d) 499, 1. c. 501. We think that the construction given Sec. 6, Art. 10, Constitution, in the second and third Y. M. C. A. cases is too strict, that is, not reasonable. Such construction confines the concept of charity solely to the relief of the destitute, and excludes all humanitarian activities, though rendered at cost or less, which are intended to improve the physical, mental and moral condition of the recipients and make it less likely that they will become burdens on society and make it more likely that they will become useful citizens. Prior to the second Y. M. C. A. case the legal concept of charity, in Missouri, was not confined solely to the relief of the destitute."

Appellants offer us many definitions of "charity." The term is a broad one and broader now than formerly. Appellants say that there can be no charity in a legal sense if the element of gift is lacking. Even so, a gift of money is not required. We think the element of gift is not lacking under the facts of this case. True, the handicapped employees of Goodwill are not recipients of alms. They

render some service for the wages they receive and some of them may render full value. Yet, they are given the opportunity, denied them by the harsh competition of the business world, for employment with some remuneration at the start and with the hope of employment in competitive industry after they are trained. We think that constitutes charity, and charity of a practical sort, for it helps the helpless and relieves the State of the burden of their support. Goodwill sells the product of its employees' labor, but the primary purpose is not to make a profit. [See Y. W. C. A. v. Baumann, 344 Mo. 898, 130 S. W. (2d) 499.] Indeed, to throw away or give away its products would tend to destroy Goodwill's primary purpose, for the morale of the employees would be lessened if they believed they were receiving a dole for unproductive labor. There is no claim that any officer or non-handicapped employee of [41] Goodwill receives extravagant compensation.

Goodwill furnishes some competition to dealers in second hand merchandise, but we do not regard this as a serious menace to trade. Probably not many persons will donate their wealth, without hope of financial return to them, to the operation of industries similar to Goodwill. If they do, no doubt the resulting gain in uplifted humanity and lessened cost to the State will outweigh any damage to general industry and loss of taxes.

Appellants suggest that some business men and companies employ some inexperienced and even handicapped persons and train them for better positions. True, but that is not usually done for the purpose of placing such employees in better positions with *other* firms. Some businesses also operate at times without profit, but not intentionally. The primary purpose of business, generally, is profit. The primary purpose of Goodwill is to aid the handicapped, and profit, if any, is incidental.

Each case of this sort must be decided upon its own peculiar facts. Upon full consideration of the record and the able briefs and argument of counsel for each side we believe that the purposes of Goodwill, as expressed in its charter and exemplified by its operations, fall within a reasonable definition of pure charity.

The judgment is affirmed. All concur.