ST. LOUIS GOSPEL CENTER (Plaintiff), Respondent,

v.

William B. PROSE, Acting Assessor of the City of St. Louis, et al. (Defendants), Appellants.

No. 44416.

Supreme Court of Missouri.

Division No. 1.

July 11, 1955.

Samuel H. Liberman, City Counselor, Charles J. Dolan, Associate City Counselor, Thomas F. McGuire, Assistant City Counselor, St. Louis, for appellants.

Wilbur B. Jones, Sam Elson, Salkey & Jones, St. Louis, for respondent.

VAN OSDOL, Commissioner.

■ This is an action to enjoin the Assessor, the Comptroller and the Collector of the City of St. Louis from assessing, extending and collecting taxes against plaintiff's real estate located at 4633 Lindell Boulevard in St. Louis, and to declare the property exempt from taxation for the year 1953. The net amount of the tax assessed against the property for that year was $1,143.58. Plaintiff had alleged the property was exempt under the provisions of Const. Art. 10, § 6, V.A.M.S., and Section 137.100(6) RSMo 1949, V.A.M.S. The trial court found and entered a decree in favor of plaintiff, by which decree the defendant taxing officials were restrained and enjoined, and it was declared the described real estate was free and exempt from taxation for 1953. Defendants, taxing officials, have appealed. This court has appellate jurisdiction of the case, the construction of the Constitution and revenue laws of this state being involved. Const. Art. 5, § 3, V.A.M.S.

Plaintiff, St. Louis Gospel Center, was incorporated in 1920 by pro forma circuit court decree. In Article III of its articles of association, it is stated that the purposes of the association are "to promote the spiritual welfare of the community, to encourage the study of the Bible as the inspired word of God, and to spread the gospel of Jesus Christ for the spiritual welfare and salvation of the people." The

property at 4633 Lindell (hereinafter sometimes referred to as the "Annex") was acquired sometime in the year 1952. The building is a brick, three-story, fifteen-room residence structure approximately 48' x 57' in dimension. There is a basement in which there is a two-room apartment, and a two-story brick garage with an apartment on the second floor thereof.

Of the Gospel Center, a witness, Oscar B. Bottorff, chairman of plaintiff's board of directors, testified the name "Gospel Center" indicates "just what it is"—it is engaged in the work of teaching the gospel; and Mr. Bottorff said its buildings, including its church building at 4625 Lindell as well as the Annex, are used by plaintiff in fulfilling plaintiff's religious, charitable and educational purposes. Mr. Bottorff testified the Annex is used in connection with plaintiff's church building at 4625 Lindell, and Gospel Center operates in close association with Midwest Bible and Missionary Institute (hereinafter sometimes referred to as "Midwest"). See Midwest Bible & Missionary Institute v. Sestric, Mo.Sup., 260 S.W.2d 25. Mr. Bottorff further testified there are various people living in the Annex "without rent, students who are there, who desire to study and know the Bible, to use it in the Lord's work, and, however, we do permit other Christian workers who are interested in the Lord's work, to reside there at a modest rental, but that is all turned over without profit to the St. Louis Gospel Center for its religious, educational and charitable work, * * *."

Of the six rooms on the first floor of the Annex, two rooms have been combined into one large room which is used as an assembly room for group meetings. This large room is also used as the church office, and for committee and directors' meetings; and religious services, including Bible classes, are conducted there. Mr. Bottorff and his sister—an aged lady but an active worker in the Church—occupy two rooms on the first floor rent free. Mr. Bottorff teaches Bible classes. He also collects rentals, and handles or supervises the business of Gospel Center. He has made no charge and receives no compensation for these services. When the church building was acquired, Mr. Bottorff sold his home and gave $12,500 to plaintiff for use in purchasing the church property; and, apparently by agreement, he has since resided in the Annex rent free, as stated. The custodian of Gospel Center's buildings resides with his family on the third floor of the Annex; and the apartment over the garage is occupied by Mr. Knouse, a member of the faculty of Midwest. Mr. Knouse supervises the work of the students of Midwest who reside in the Annex. The pastor and associate pastor of the Gospel Center Church also have or have had apartments on the second floor of the Annex; and certain of the other rooms and apartments in the Annex are occupied by students of Midwest. It was in evidence that these students pay "a very modest charge" and they are selected because of their "lack of financial resources." However, two unfurnished rooms on the second floor were (January 1, 1953) and, it is inferred, at the time of the trial of this case, February 23, 1954, occupied by a Miss Hobbs, who, as a tenant, had occupied the rooms for a number of years before the Annex was acquired by plaintiff. Miss Hobbs, although a Christian, was not a member of the Gospel Center Church, and was not connected with Gospel Center's religious, charitable and educational activities, nor was she connected in any way or active in the fulfillment of the purposes of Midwest. She occupied the two rooms, as stated, and paid a monthly rental of $42.50 to plaintiff. It may be inferred that on January 1, 1953, Miss Hobbs was the only person residing in the Annex who was not a worker or of the family of a worker at Gospel Center, or a student or a member of the faculty of Midwest.

Article 10, Section 6 of the Constitution of Missouri, supra, provides, "* * * and all property, real and personal, not held for private or corporate profit and used exclusively for religious worship, for schools and colleges, for purposes purely

charitable, or for agricultural and horticultural societies may be exempted from taxation by general law. * * * " ·

Section 137.100(6), supra, provides as follows, "All property, real and personal actually and regularly used exclusively for religious worship, for schools and colleges, or for purposes purely· charitable, and not· held for private or corporate profit· shall be exempted from taxation for· state, city, county, school, and local purposes; * *."

Appellants do not seriously contend, generally, that plaintiff is not endeavoring to fulfill its religious, charitable and educational· purposes as set out in its charter; nor do appellants contend that plaintiff and Midwest are not associated in endeavoring to attain kindred objectives. But, in determining whether plaintiff's property is exempt from taxation under the cited constitutional and statutory provisions, supra, it is, in the main, the "exclusive" use of the building for such purposes that determines the application of tax-exempting intendment. It has been noted that Miss Hobbs had for a number of years, and until plaintiff bought the Annex and thereafter, occupied an apartment of two rooms as a tenant. As we have stated, she was in no way associated with or active in the religious, charitable and educational work of Gospel Center or of Midwest. The relation which plaintiff and Miss Hobbs bore to each other was that of landlord and tenant, and the small apartment occupied by her to the extent of its area or space, during her tenure, interfered with and interrupted the *exclusive* use of the property for religious, charitable and educational purposes. Her occupancy as a mere tenant in no way furthered, fulfilled, rounded out or dovetailed into the purposes of plaintiff or of Midwest as religious, charitable or educational organizations. The rooms occupied by her as a tenant were availed of by plaintiff as a source of income, or profit. Actually and legally the relationship was purely a commercial one. Because of the nature of her use and occupancy, it could not be reasonably said the building was used exclusively for reli-

gious, charitable or educational purposes, and so the property did not come within the purview of the tax-exempting constitutional and statutory provisions, construing them from a strict though reasonable standpoint.

■ Mr. Bottorff testified that the occupancy by Miss Hobbs was not interrupted, at the time plaintiff bought the Annex, because of "rent control"; and plaintiff-respondent in its brief further urges that the continued use and occupancy by Miss Hobbs was justifiable as a matter of courtesy; or, in any event, there was but a deviation of insubstantial, transitory and *de minimis* nature. But we treat with the relationship which Miss Hobbs factually bore to plaintiff; and, although rent paid by Miss Hobbs was received by plaintiff and used in furthering plaintiff's religious, charitable and educational purposes, the nature of the occupancy and use was, nevertheless, such as to destroy the "exclusive" use of the property for such purposes within the meaning of the tax-exempting provisions. State ex rel. Koeln v. St. Louis Y.M.C.A., 259 Mo. 233, 168 S.W. 589. If it were assumed the incidence of the former rent control regulatory provisions is material here, yet we have observed that Miss Hobbs continued as plaintiff's tenant until the time of trial in February, 1954; and plaintiff-respondent has indicated in its brief that it was not until December, 1954, that Miss Hobbs voluntarily moved away from the Annex. In this case, absent the fact that the occupancy by Miss Hobbs was in some reasonable way in a furtherance or fulfillment of plaintiff's religious, charitable and educational purposes, we must and do give decisive effect to the rule of strict construction of tax-exempting provisions as against the taxpayer. As this court said in Young Women's Christian Ass'n v. Baumann, 344 Mo. 898, 130 S.W. 2d 499, 502, "Of course, we must be careful that the exemption be not enlarged beyond reasonable implications."

It is the settled rule "that exemption statutes are strictly but reasonably (so as not to curtail the intended scope of the ex-

emption) construed. We also have in mind that charitable use exemption depends upon the use made of the property and not solely upon the stated purposes of an organization." Young Men's Christian Ass'n of St. Louis and St. Louis County v. Sestric, 362 Mo. 551, 242 S.W.2d 497, 502; Salvation Army v. Hoehn, 354 Mo. 107, 188 S.W.2d 826; Missouri Goodwill Industries v. Gruner, 357 Mo. 647, 210 S.W.2d 38.

In State ex rel. Spillers v. Johnston, 214 Mo. 656, 113 S.W. 1083, 1085, 21 L.R.A., N.S., 171, this court approved the following language, "The phrase 'exclusively used' has reference to the primary and inherent use as over against a mere secondary and incidental use. People ex rel. Delta Kappa Epsilon Soc. of H. College v. Lawler, 74 App.Div. 553, 77 N.Y.S. 840, loc. cit. 842, et seq. If the incidental use (in this instance residing in the building) does not interrupt the exclusive occupation of the building for school purposes, but dovetails into or rounds out those purposes, then there could fairly be said to be left an exclusive use in the school on which the law lays hold. First Unitarian Society v. Hartford, 66 Conn. 368, loc. cit. 375, 34 A. 89." In the Spillers case, the residence of the defendant-proprietor and his family on the school property was in further fulfillment of the primary duty of developing the minds, manners and morals of the pupils of the school. The tenor of the language approved in the Spillers case is evident in the basic reasoning in the subsequent cases cited by plaintiff-respondent. Salvation Army v. Hoehn, supra, 354 Mo. 107, 188 S.W.2d 826; Missouri Goodwill Industries v. Gruner, supra, 357 Mo. 647, 210 S.W.2d 38; Young Men's Christian Ass'n of St. Louis and St. Louis County v. Sestric, 362 Mo. 551, 242 S.W.2d 497; Midwest Bible & Missionary Institute v. Sestric, supra, Mo.Sup., 260 S.W.2d 25. In St. Louis Council, Boy Scouts of America v. Burgess, 362 Mo. 146, 240 S.W.2d 684, the evidence, in final analysis, showed a present, regular and exclusive user of all the property for purposes purely charitable.

We are of the opinion the case of State ex rel. Koeln v. St. Louis Y.M.C.A., supra, is supportive of our decision here. See also Fitterer v. Crawford, 157 Mo. 51, 57 S.W. 532, 50 L.R.A. 191. In State ex rel. Koeln v. St. Louis Y.M.C.A., sometimes referred to as "the first Y.M.C.A. case," the defendant Y.M.C.A. owned two buildings in St. Louis which were mainly used for the physical education and the spiritual and social development of young men and boys. However, some of the rooms on the first floor were rented for stores and other commercial purposes. The rental received by defendant Y.M.C.A. was ultimately used only to promote the religious and educational work of defendant. It was held that these buildings were not used exclusively in the religious and educational work of defendant, and so the buildings were subject to and not exempt from taxation. In Young Women's Christian Ass'n v. Baumann, supra, 344 Mo. 898, 130 S.W.2d 499, 502, cited by plaintiff-respondent, this court had occasion to re-examine the three Y.M.C.A. cases theretofore decided, and it was said that State ex rel. Koeln v. St. Louis Y.M.C.A., supra, the first Y.M.C.A. case, was correctly ruled on the facts. The rental of a portion of the Y.M.C.A. buildings for commercial purposes "was not 'incident to or a part of' the use for religious, educational or charitable purposes. It may have been a 'secondary' use, in that only a *small* part of the building was so used, but it was a *different* use, not incidental to the main use, and thus the 'exclusive' character was destroyed."

The judgment and decree should be reversed, and the restraining order dissolved.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.