**PARACLETE MANOR OF KANSAS CITY,**
Appellant,

v.

**STATE TAX COMMISSION of Missouri,**
Respondent.

No. 54229.

Supreme Court of Missouri,
Division No. 1.

Nov. 10, 1969.

Motion for Rehearing or for Transfer to Court
En Banc Denied Dec. 8, 1969.

Max W. Foust and Duke W. Ponick, Jr. of Morris, Foust, Moudy & Jacobson, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Walter W. Nowotny, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

LAURANCE M. HYDE, Special Commissioner.

Plaintiff petitioned for review of decision of the State Tax Commission denying exemption from taxation. The circuit court entered judgment affirming the decision of the Tax Commission and plaintiff has appealed. Construction of the Constitution and the revenue laws is involved. 1945 Const. § 3, Art. V, V.A.M.S.

Plaintiff was incorporated as a Missouri nonprofit corporation for the purpose of constructing and operating a rental facility for elderly persons with low incomes under the provisions of § 202 of the Housing Act of 1959 as amended, § 1701q, Title 12, U.S.C. Plaintiff built a nine-story concrete frame building in Kansas City at a cost of $1,375,000.00, with the proceeds of a 50-year U. S. Department of Housing and Urban Development loan, bearing interest at 3¾%, which was a first mortgage on the property. The principal and interest was payable in equal installments which could not be prepaid. Plaintiff owns no other real estate. Its directors were seven representatives of the Kansas City Baptist Temple and three from a post of the Veterans of Foreign Wars. It had no members or stockholders. Its only salaried employee is a resident manager, salary $4,860.00 a year, who paid a rental of $105.00 per month for the apartment he occupied. Its only other employees were four part-time helpers, who cleaned the building, hauled trash and did miscellaneous chores.

Only persons 62 years of age or older were eligible for housing, limited to single persons with an annual income not exceeding $3,950.00 and to two persons living as a family unit with an annual income not exceeding $4,800.00. Rental rates were $65.00 per month for studio units and $85.00 per month for one-bedroom units, being based on actual cost of operation including amortization of its building loan. Its rental

income is exempt from Federal income tax. Rents would have to be increased if plaintiff is subject to property taxes (indicated as $13.72 per unit). Rental charges include all utilities and occupants are furnished an icebox and a stove. Washing and drying facilities are available in the building but persons using them pay individually for their use. Some occupants receive welfare assistance and others receive rent supplements from the Federal government, which plaintiff administers, but all pay plaintiff the same rent for the kind of units occupied. It was shown that similar housing elsewhere in the community would cost $25.00 to $30.00 per month more. However, no persons live there without charge or for any reduced charge to plaintiff. The Housing Act authorized loans for such buildings to "private nonprofit corporations, limited profit sponsors, consumer cooperatives, or public bodies or agencies." § 1701q(a) (1) Title 12, U.S.C.

█ Exemption from taxation depends on § 6, Art. X, Const. and § 137.100 RSMo 1959, V.A.M.S., which exempts "[a]ll property * * * actually and regularly used exclusively * * * for purposes purely charitable, and not held for private or corporate profit." The Commission relies on our recent decision in Defenders' Townhouse, Inc. v. Kansas City, 441 S.W.2d 365. It is true as plaintiff says each tax exemption case is a separate cause of action and must be decided upon its own particular facts. The differences between this case and the Townhouse case claimed by plaintiff are: plaintiff has income limitations for admission; it is subject to strict statutory and regulatory conditions concerning its finances which exclude profit making (§ 202 Housing Act and regulations authorized by it); and it administers a rent supplement program for some of its occupants. Plaintiff also says Townhouse had maid service and commercial facilities that made it more like a hotel. Plaintiff further says by providing low cost housing to low income elderly citizens it relieves the burden of the state to care for them to a signifi-

cant extent and is at least as strong a case for tax exemption as Salvation Army v. Hoehn, 354 Mo. 107, 188 S.W.2d 826; Bader Realty & Investment Co. v. St. Louis Housing Authority, 358 Mo. 747, 217 S.W. 2d 489; Y.M.C.A. of St. Louis and St. Louis County v. Sestric, 362 Mo. 551, 242 S.W.2d 497.

In Salvation Army v. Hoehn, a building formerly a hotel was owned by the Salvation Army, incorporated "to engage charitable, educational, missionary, philanthropic and religious work." Housing for women and girls was provided at a low rate which was in some cases reduced to subsidize needy and deserving applicants. There was a deficit in operating costs for the first four years of operation of $29,388.83 which was made up from the general funds of the Salvation Army. Officers were on duty 24 hours daily, available for advice, guidance and counsel; and there were classes in French, German and Spanish and First Aid instruction. The exemption in this case can be justified by reason of the Salvation Army being a religious organization which furnished lodging and instruction below its cost, using its own funds for a substantial part of the cost.

Bader Realty & Investment Co. v. St. Louis Housing Authority involved an authority authorized by a Missouri statute to build housing units to replace "insanitary or unsafe dwelling accommodations" so that "areas of congested population shall be free from the menace of slums and from the fire hazards, disease, crime and juvenile delinquency which result from slum housing, and which cause 'disproportionate expenditures of public funds for crime prevention and punishment, public health and safety, fire and accident protection and other public services and facilities.'" We said (217 S.W.2d, 1. c. 492): "purposes purely charitable" now "comprehends activities *not self-supporting* 'which are intended to improve the physical, mental and moral condition of the recipients and make it less likely that they will become burdens on society * * *.'" (Emphasis ours.)

In the Y.M.C.A. case (242 S.W.2d, 1. c. 499) the stated purposes included: " 'to help young people * * * To develop Christian character * * * by the maintenance of such eleemosynary activities and services as contribute to their physical, social, mental, and spiritual growth * * * and To provide for their welfare, at a minimum cost or *where appropriate at no cost to them * * *.'* " (Emphasis ours.) Among its activities were "sponsorship and supervision of numerous boys' clubs to prevent juvenile delinquency, and supervision of parolees from penal institutions * * * The entire program * * * centers on a religious motive." (242 S.W. 2d, 1. c. 500.) There was an excess of expense over income of more than a quarter of a million dollars for each of the last three years before the case was heard, part of which was made up by assistance received from the Greater St. Louis Community Chest (1. c. 501). "In certain instances food, lodging, and other facilities are furnished without charge to boys and young men * * * in situations which, after investigation, seem to justify the action" (1. c. 502). We said: "The purposes of YMCA are 'charitable purposes' within a reasonable definition of that term" (1. c. 502). While some of facilities of the Y.M.C.A., such as the barbershops, laundry service, cleaning and pressing facilities did show an excess of income over expenses, we approved the finding of the trial court "that the provision of said facilities is not for the purpose of making profit but is for the purpose of providing charity of a practical sort, and the provision and maintenance thereof dovetails into and rounds out the charitable purposes of plaintiff" (1. c. 506). We held that, under the construction of the constitutional provision in the Salvation Army case and other cases, the Y.M.C.A. property was exempt.

It is apparent that in all three of these cases, and likewise in Missouri Goodwill Industries v. Gruner, 357 Mo. 647, 210 S. W.2d 38, the organizations involved did furnish services that were not self-supporting, for eleemosynary and charitable purposes to many persons who were not able to pay the cost thereof; and that a religious motive was involved in some of them. It also seems apparent that this was not true in the case of Paraclete where only housing was furnished and the charge to everyone was the same for the same facilities. Moreover, plaintiff was required by its government financing to make charges which would pay in full its annual interest and principal payments and accumulate a reserve equal at least to one year's annual payment. Furthermore, every annual payment increased the interest plaintiff had in the ownership of the building and after fifty years it would own it unencumbered. While it appears that in case of dissolution its assets could not be distributed to any individual or organization created or operated for profit, but only to organizations operated for similar nonprofit purposes, it does have perpetual existence; and what it could do with the property after the mortgage is paid is not clear.

In the Defenders' Townhouse case, we reviewed the decisions of many states concerning similar facilities and ruled (441 S.W.2d, 1. c. 375): "[T]his facility, particularly its use, does not fall within 'purposes purely charitable' and therefore is not exempt from taxation." Plaintiff seeks to distinguish these decisions from the situation here on the grounds hereinabove noted. However, we consider the controlling elements which distinguish this case from the Salvation Army and Y.M. C.A. cases, and others cited, and bring it within the rule of the Townhouse case are that no one is permitted to occupy the rooms without payment of the established rental which is the same to all for the rooms occupied; that the rents are fixed at an amount necessary to pay the interest, amortize the principal and pay all expenses of operating and maintaining the property and even provide a surplus equal to an annual mortgage payment; that it was thus intended to be completely self-supporting and self-liquidating without any intention that gifts or charity were to be involved;

that it is thus actually competitive with landlords offering other residential property for rent on which taxes must be paid; and that no fraternal fellowship or religious purpose is involved, in fact chapels or other facilities of a religious nature are ineligible facilities under the regulations. While plaintiff's operators are no doubt altruistically motivated and serving a socially viable institution which we cannot hold to be entitled to exemption from taxation.

■ Plaintiff further contends it was denied a fair hearing by the Tax Commission in violation of the due process clause of the state and federal constitutions. (§ 10, Art. 1, 1945 Const. and § 1, 14th Amendment, U.S.Const.) However, plaintiff says in its brief: "The issue is *not* whether the State Tax Commission's findings of fact and conclusions of law are supported by substantial evidence but whether the Commission correctly applied the law to those facts." Thus plaintiff is not complaining of the findings of fact made by the Commission or that it was not allowed to show all the facts. Instead it claims a prejudgment of the merits of the case, stated during the hearing of evidence, citing Jones v. State Dept. of Public Health and Welfare, Mo. App., 354 S.W.2d 37. That case involved an applicant's claim for aid to dependent children on the basis that her husband was physically and mentally incapacitated. The referee made fact statements to the contrary based on his own observation of plaintiff's husband at the hearing, which were preserved in the record on which the director made decision adverse to claimant. The Court of Appeals affirmed the order of the circuit court setting aside the director's decision, holding the referee's impropriety prevented a just determination by the director. In this case the determination of the issues was made by the commission and not by someone else. The statements of the Chairman and a Commission member claimed to show prejudgment here were their questions asking if plaintiff was furnishing anything free, during the testimony of plaintiff's president. The Commission members and their counsel may have been unduly persistent in asking about this but plaintiff was permitted to get all the facts in the record considered material by it and on the whole record we find plaintiff was not denied a fair hearing.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by LAURANCE M. HYDE, Sp. C., is adopted as the opinion of the court.

SEILER, P. J., and HOLMAN, J., concur.

STORCKMAN, J., absent.