NATIONAL CEMETERY ASSOCIATION OF MISSOURI, a Corporation, Plaintiff, VALHALLA CEMETERY ASSOCIATION, a Corporation, Intervener, Appellant, v. WILLIS W. BENSON, Collector of St. Louis County, and MARTIN L. NEAF, Assessor of the County of St. Louis, Defendants.—129 S. W. (2d) 842.

Division One, June 14, 1939.*

*NOTE: Opinion filed at September Term, 1938, April 1, 1939; motion for rehearing filed; motion overruled at May Term, 1939, June 14, 1939.

*Clarence T. Case, David W. Voyles* and *George L. Stemmler* for appellants.

*Arthur V. Lashly, Arthur U. Simmons* and *John E. Mooney* for respondents.

*Leahy, Walther, Hecker & Ely, amicus curiae,* for Calvary Cemetery Association.

*Edw. V. P. Schneiderhahn* and *Bernard J. Huger, amici curiae,* for John J. Glennon, Archbishop of St. Louis (as to New SS. Peter and Paul Cemetery).

DOUGLAS, J.—The question in this case is whether certain land owned by the plaintiff is exempt from taxation under Article X, Section 6 of the Missouri Constitution which provides that cemeteries shall be exempt from taxation.

The plaintiff was incorporated in June, 1911, pursuant to the laws relating to manufacturing and business corporations, under the name "National Securities Company of St. Louis" with a capital stock of $20,000, which was later increased to $250,000. Its charter empowered it to deal in real estate, to subdivide the same into lots for residence, business, cemetery, park or other purposes, to loan and borrow money on real estate and to deal in mortgages, bonds and securities. It purchased approximately 194 acres of land in St. Louis County and proceeded to subdivide a part of the land into burial lots and called it Valhalla Cemetery. In November, 1911, the Valhalla Cemetery Association, Intervenor, was incorporated under a *pro forma* decree of the St. Louis County Circuit Court as a non-profit association for the purpose, among others, of maintaining a cemetery. In 1912

the plaintiff conveyed to the association the "gates and fences, hedges, avenues, driveways, walks, trees and other improvements in the cemetery." The title to all unplatted land and all unsold burial lots remained in the plaintiff. In order to establish a "care" fund, the plaintiff agreed to pay the association a certain percentage of the proceeds received from the sale of burial lots, but only after the sale of the first 1000 lots had been made and until a certain sum had been paid, such funds and the income therefrom to be used by the association for the care and maintenance of the cemetery. By a supplemental agreement the percentage to be paid the association for the care fund was changed. A new stipulation was added that when nine-tenths in area of the land, which might thereafter be embraced in the cemetery, should be sold then the sole control of the cemetery would pass to the association.

In 1914, in an *ex parte* proceeding before the County Court, the plaintiff and the intervenor jointly obtained an order directed to the assessor to strike from his assessment book the assessment of taxes for the year 1914 on the property carried in the names "The Valhalla Cemetery Association, the National Securities Association." The Court ordered further that said real estate "shall be exempt from taxation as long as the same shall be used exclusively for cemetery purposes." The plaintiff has since changed its name to "National Cemetery Association of Missouri."

From time to time the plaintiff has purchased small additional • tracts and has sold off parts of its holdings. To an electric company it sold about nine acres for a right-of-way. In 1923 it sold to a private corporation a little more than forty-two acres for $100,000. The total sales to others than purchasers of burial lots amounted to 54.56 acres, leaving 153.36 acres.

In April, 1925, the Board of Equalization issued a citation directing appellants to appear before it and show cause why the land was not subject to taxation. Appellants appeared and after a hearing the Board ordered that sixty-five acres of the tract, which was unplatted for burial purposes and in which there were no burials, be extended on the assessor's books as subject to taxation. Pursuant to such order, said sixty-five acre tract was placed on the tax roll for the year 1924 and has been so carried each year thereafter, including 1934. The testimony shows when the order was entered there was some 67.24 acres of land, part of which plaintiff's witness described as "wild and vacant," undeveloped and not subdivided into burial lots. Suits for taxes on the sixty-five acres were filed in 1927 and in 1930 for taxes due for the years 1925-28, inclusive. The plaintiff later acquired ten building lots in a subdivision called Bernice Place. In 1928, and each year thereafter, these lots were assessed for taxes. No taxes were paid. The Collector first advertised in October, 1934, the sixty-five acres and the ten lots for public sale because of the delinquent taxes, whereupon plaintiff filed suit (in which the association inter-

vened), for an injunction to restrain such sale and also for the cancellation of the assessments and of the tax-bills issued on them. Appellants have appealed from the action of the trial court dismissing the suit.

No general rule has been developed as to what determines when land is used as a cemetery for the purpose of exemption from taxation. This is because exemptions are found in statutory enactments which are variously expressed. Exemptions flow from considerations of public policy. This policy ordinarily takes two forms. Sometimes the exemption is based on the character of the association, its objects and purposes. In other instances the exemption applies to the property owned by the association and turns on its nature and use. There may be a further qualification requiring that the cemetery be not operated for profit. For a compilation of the laws of the various states, and a comprehensive discussion of this subject see Jackson, The Law of Cadavers, page 262, et seq.

■ Article X of our Constitution pertaining to taxation and revenue under Section 6, states in part: ''The property, real and personal, of the State, counties and other municipal corporations, *and cemeteries*, shall be exempt from taxation.'' An exemption from taxation can be sustained only when expressed in explicit terms and it cannot be extended beyond the plain meaning of those terms. The exemption intended here is to ''cemeteries'' as such. The word ''cemeteries'' is used independently of the balance of the sentence and the other words do not apply to or affect it. [State ex rel. Mount Mora Cemetery Association v. Casey, 210 Mo. 235, 109 S. W. 1.] The Legislature has not expressed itself on this subject nor do we think such is necessary before the exemption may be applied. We overrule respondents' contention that this provision is not self-executing. We hold that it is. Generally, constitutional provisions declaring that certain property shall be exempt are self-executing and need no legislation to enforce the exemption. [1 Cooley, Taxation (4 Ed.), sec. 650.]

■ We must determine therefore what is included under the word ''cemetery.'' A cemetery has been defined to be: ''A place or ground set apart for the burial of the dead, orig. a Roman catacomb, later the consecrated yard of a church so used, now any burial ground, esp. on a large scale; a graveyard; a necropolis.'' [Webster's New International Dictionary (2 Ed.).] ''A cemetery is a place set apart, either by municipal authority or private enterprise, for the interment of the dead.'' [10 Amer. Juris., Cemeteries, sec. 2, p. 487.] To invoke the exemption the property must have been ''set apart'' for the burial of the dead. We are not concerned with that part of the land used for avenues, drives and walks which are appurtenances necessary to the use and enjoyment of the lot-owners.

We do not find a dedication either by estoppel or acts *in pais* for

burial purposes. The land, except the Bernice Place lots, was not even platted into burial lots. The plaintiff corporation, a manufacturing and business corporation, has retained and now holds title to all the tract which has not been already sold as burial lots with the exception of the walks and drives. By the agreements with the association it recites a "contemplation" of filing "additional plats showing extensions and enlargements of said cemetery" but in no way binds itself to do so or to enlarge the cemetery. There is nothing to prevent the plaintiff from selling off the "wild and vacant," undeveloped land to others than those buying burial lots as it did the forty-two acre tract.

As we have pointed out no uniform rule as to what constitutes a cemetery under provisions for tax exemptions can be declared. Each case must be governed by local enactments and within the locality by the extent to which the property is appropriated, prepared and used for cemetery purposes. For instance, in Massachusetts it has been held that a mere dedication or appropriation on paper is not enough. Some active measures must be taken toward preparing the ground for a burial place. [Woodlawn Cemetery v. Inhabitants of Everett, 118 Mass. 354.] In that case it was agreed that no part of the land had been used for burials, or divided off or laid out into lots or permanent avenues and that no attempt had been made to sell it for the purpose of burial. The Court found that use of the land for growing trees and shrubs, cutting turf to be used in preparing and ornamenting a cemetery is no dedication of such land itself for the purpose of a cemetery or burial place for the dead. [To the same effect see West Ridgelawn Cemetery v. City of Clifton, 109 N. J. Law 146, 160 Atl. 534 and Fairview Development Co. v. Fay, 90 N. J. Law 427, 101 Atl. 405; Glen Oak Cemetery Co. v. Board of Appeals of Cook County, 358 Ill. 48, 192 N. E. 673.] In Illinois it was held that merely platting a large body of land and appropriating only a small part of it for actual burial purposes would not exempt the whole from taxation. However, the future needs of a cemetery may be reasonably anticipated by appropriating grounds to burial purposes so as to bring them within the exemption. [Rosehill Cemetery Co. v. Kern, 147 Ill. 483, 35 N. E. 240.]

Where the evidence showed that land was *used* as a cemetery it was held to be exempt under Article X, Section 6. [State ex rel. Rosenblatt v. Wesleyan Cemetery Assn., 11 Mo. App. 560.] We can find nothing in the record to show that the land assessed here has either been used as a cemetery or that active measures have been taken toward preparing it for cemetery purposes. The rule that statutes exempting property from taxation must be strictly construed has been largely applied to corporations organized for profit and is applicable here. [Washington University v. Bauman, 341 Mo. 708, 108 S. W. (2d) 403.] The burden is on the property owner clearly

to establish that his property falls within the exempted class. As appellants have failed to do so, we must hold that the land here involved is not within the constitutional exemption. In view of this conclusion we need not discuss respondents' argument that the property is taxable because it is held for the purposes of pecuniary profit. On this contention see United Cemeteries Co. v. Strother, 332 Mo. 971, 61 S. W. (2d) 907.

The assessments are not void because the description "65 acres unplatted portion of Valhalla Cemetery" in Normandy School District is insufficient. In some assessments the word "unplanted" was inadvertently substituted for "unplatted." We have followed the general rule in this State that a description is sufficiently definite and certain if the description by its own terms will enable one reasonably skilled in such matters to locate the land. [Elsberry Drainage District v. Seerley, 329 Mo. 1237, 49 S. W. (2d) 162.] A valid assessment is essential to a valid tax. In State ex rel. Wyatt v. Wabash Railway Company, 114 Mo. 1, 21 S. W. 26, we quoted from Philadelphia v. Miller, 49 Pa. St. 440: "Where the assessment wholly fails to lead to identification, so that neither the owner nor the officer can tell that his land is taxed, the duty of payment cannot be performed, and the assessment is void." Mr. Robert Kinsey, a surveyor, who was called as a witness by plaintiff testified that from the beginning he did all the surveying work for the cemetery. He stated that there was 67.238 acres of unplatted land and upon deducting two acres for variations and roadways, there remained 65.238 acres of unplatted land in April, 1925, and the subsequent years for which the assessments were made. We hold that the description was sufficient, particularly in view of Section 14052, Revised Statutes 1929 (1 Mo. Stat. Ann., p. 814,) which requires cemetery associations to record a proper plat of the cemetery showing its walks, roads, avenues and burial lots and annually to record plats showing additional subdivisions of the cemetery into burial lots.

Nor are the assessments void because they were made in the name of "National Securities Company" instead of "National Cemetery Association of Missouri" its new name adopted in 1924. Section 9765, Revised Statutes 1929 (12 Mo. Stat. Ann., p. 7881), requires that the property of manufacturing and business corporations shall be assessed in the corporate names. However, Section 9793, Revised Statutes 1929 (12 Mo. Stat. Ann., p. 7900), provides that each tract of land shall be chargeable with its own taxes no matter in whose name it may be assessed and that an error or omission in regard to the name of any person shall not impair the validity of the assessment for taxes. The assessor may rely on record title. The irregularity in the name is cured by this latter section.

The County Board of Equalization had jurisdiction to add the land to the assessor's book and to assess its value. The plain

meaning and intention of Section 9816, Revised Statutes 1929 (12 Mo. Stat. Ann., p. 7914), permits the Board to assess property which has been omitted from the assessor's book. [See State ex rel. Davis v. Walden, 332 Mo. 680, 60 S. W. (2d) 24.] Nor is the Board prohibited from doing this by the County Court's order entered in 1914. That order struck from the assessor's book the assessment of taxes for that year. Of this no complaint is made. The Court went further and attempted to decree for the future that the land should continue exempt so long as it would be used exclusively for cemetery purposes. Its authority to correct the books of the assessor in the event land not subject to taxation is erroneously assessed, is under Section 9980, Revised Statutes 1929 (12 Mo. Stat. Ann., p. 8019). No power is given the Court as to future assessments, only the right to correct erroneous assessments already made. Its order as to future assessments was therefore void and the charge that the action of the Board of Equalization constituted a collateral attack upon it cannot be sustained. Furthermore, we have found that the land was not used as a cemetery.

Having reached these conclusions it becomes unnecessary to discuss the other assignments of error. We adjudge that the learned trial court was correct in dismissing appellants' petitions and its judgment should be affirmed. It is so ordered. All concur.

## On Motion for Rehearing.

DOUGLAS, J.—Appellants and *amici curiae* have filed briefs urging this Court on the one hand to find cemeteries exempt when conducted wholly or in part by private enterprise and on the other when conducted by benevolent and religious corporations. In this opinion we have held that cemeteries as such are exempt. This is so regardless of the character of ownership. In United Cemeteries Co. v. Strother, supra, it was expressly stated that the statute (Sec. 14052, R. S. 1929, 1 Mo. Stat. Ann., p. 814) implies that cemeteries may be managed and conducted for profit. This is in nowise inimical to the constitutional exemption. The opinion in that case which gave a preference to the holder of the note secured by a deed of trust on a cemetery, upon a foreclosure sale of the assets (but not the land) of the cemetery company, says a sale under a power of sale in a deed of trust is not permitted where the land is "*platted and used*" as a cemetery.

It is also argued that we have overlooked the decision in Tracy v. Bittle, 213 Mo. 302,. 112 S. W. 45, which restrained the defendant from desecrating a public graveyard. The facts in that case show in 1860 the owner of a tract of land staked off a half-acre of land for a neighborhood graveyard for use by the public as well as by his own family. In that case we ruled that a common law dedica-

tion of lands for such use was recognized in this State and the half-acre was dedicated for a public and charitable use. We quoted Campbell v. The City of Kansas, 102 Mo. 326, 13 S. W. 897, a case involving land dedicated to public use for a graveyard in 1847, where we ruled that land may be dedicated to pious and charitable purposes as well as for public ways, commons and other easements in the nature of ways. We must bear in mind that at that time the modern cemetery was unknown here. The dedicator was, in a degree, a donator. In the above case the words "donated for a graveyard" were marked on the plat. Where a donor dedicated lands for public, pious or charitable uses and they were accepted for such purposes the dedication was complete as against his interest. [Rutherford v. Taylor, 38 Mo. 315.] We found that this graveyard had been used by the public as a burial place and there being no abandonment, the interest of the public was still paramount. We do not find such ruling to be applicable here. The motion for rehearing is overruled.