**COMMUNITY MEMORIAL HOSPITAL, a Not for Profit Corporation, Respondent,**

v.

**CITY OF MOBERLY, Missouri, et al., Appellants.**

No. 52562.

Supreme Court of Missouri, Division No. 1.

Dec. 11, 1967.

Motion for Rehearing or to Transfer to Court En Banc Denied Jan. 8, 1968.

Roy D. Williams, Williams, Williams & Reesman, Boonville, Edwards, Hess & Collins, Macon, for respondent, Community Memorial Hospital.

Marion E. Lamb, Moberly, for appellants, City of Moberly and others.

HIGGINS, Commissioner.

Action for declaratory judgment and injunctive relief in which respondent had judgment exempting its real estate and personal property from taxation by County of Randolph and City of Moberly for years 1958 through 1965 and enjoining collection of taxes levied against those properties for the years in question. The judgment contained a finding that the properties were, during those years, "actually and regularly used exclusively for purposes purely charitable and not held for private or corporate profit." Art. X, Sec. 6, Constitution of Missouri, V.A.M.S.; Sec. 137.100(5) V.A. M.S.

Respondent, Community Memorial Hospital (Osteopathic), was incorporated June 28, 1957, under the General Not-For-Profit Corporation Act of Missouri, Chapter 355, V.A.M.S., with purposes: "To establish and maintain a hospital for the care of persons suffering from illnesses or disabilities which require that the patients receive hospital care; to carry on any educational activities related to rendering care to the sick and injured or the promotion of health, which in the opinion of the Board of Trustees may be justified by the facilities, personnel, funds or other requirements that are or can be made available; to promote and carry on scientific research relating to the care of the sick and injured insofar as, in the opinion of the Board of Trustees, such research can be carried on in, or in connection with the hospital; to participate, so far as circumstances may warrant, in any activity designed and carried on to promote the general health of the community; to receive gifts, bequests, devises and other conveyances of personal and real property and to accept same with or without limitations or as endowments or as memorials or in trust for the benefit of or for any purpose or purposes for which the corporation is organized; to maintain an out-patient clinic and to foster, encourage and promote study, investigation and research in the art of diagnosis, healing and relieving human suffering and to foster and spread knowledge of medicine and treatment in relieving human suffering and disease; to procure the attendance of competent physicians and surgeons, (both D.O. and M.D.), nurses and attendants including laboratory technicians, scientists, and other persons necessary, usual or beneficial in carrying out the purposes of the corporation and to maintain free beds for such disabled and indigent persons and to furnish proper attendance for their care as may be admitted to the hospital, subject to such special rules and regulations as the Board of Trustees may establish from time to time for their admission, care and treatment. The hospital shall be conducted independent of sectarianism, and shall be open to any sect or creed. No charge for board, room, general nursing, medicines, medical care and attention shall be made of those patients who are unable to pay."

Examination of respondent's charter shows that there is no provision for stock shares. No dividends ever have been paid to any person, and no mileage or compensation has been paid to any person serving as a member of the board of trustees. No salaries have been paid to the medical staff which is open to all doctors, M.D. or D.O., upon application and qualification, and all income has been devoted to the hospital and its improvement. In the event of dissolution of respondent, "no part of the assets [over and above liabilities] shall be distributed to members of the corporation" unless provision be made against "diversion of such assets from not-for-profit purposes." Section 355.230, V.A.M.S.

On July 1, 1957, Community Memorial Hospital acquired all the physical properties and assets of McCormick Osteopathic Hospital, a corporation organized under the General and Business Corporation Law of Missouri, for $75,000. (Three doctors who owned all the stock of this corporation, together with four laymen, were the first board of trustees in the Articles of Incorporation of Community Memorial Hos-

pital.) The items so acquired consisted of Lots, 4, 5, and 6, Block 12, Burkholder's First Addition to the City of Moberly, Missouri, upon which was situate a hospital building, hospital equipment and building contents, $3,000 bank account, $6,000 savings and loan account, and $120,000 accounts receivable. The three doctors who owned the McCormick Hospital each made a $1,500 gift "for operating account" and respondent executed interest-free promissory notes to each of the three doctors totaling $70,500 payable in ten years in $300 monthly installments for the purchase price of McCormick's real estate and personal properties. Respondent also assumed $4,000–$6,000 in current liabilities of McCormick. Lots 1, 2, and 3, Block 12, Burkholder's Addition, were acquired March 27, 1962, by purchase from H. Mae McCormick, widow of Dr. W. H. McCormick, one of the owners of McCormick Hospital. These lots are contiguous to the hospital and are used as a unit with the hospital for driveway, parking, and physical therapy.

Merle Rice, respondent's administrator since 1964, had been acquainted with the use by Community Memorial Hospital of its properties since its incorporation to time of trial; Clifford Falzone acted as administrator in parts of 1963 and 1964, and Wylie Mears had been chairman of the board of trustees for a year and a half and was an incorporator and on the board since organization of Community Memorial in 1957. All three testified that all the properties owned by Community Memorial had been used regularly and exclusively for hospital purposes and not for investment or other purposes. "It has been used by the general public, anyone that comes to the door," and by both pay and indigent patients. Respondent's rates for room and other hospital services are comparable and "run a little lower" than rates charged by other hospitals in the area; employees' wages are average and the operation has been efficient in that assets have been improved and increased in value and indebtedness is practically retired.

Respondent's hospital and services at all times have been available equally both to pay patients and those who could not pay. Average occupancy rate shows that the hospital has never operated at capacity and rooms and services always have been available for both types of patients. Respondent's financial reports show that in each year of operation from 1957 through 1965 respondent hospital and its services have been utilized for the benefit of persons who were unable to pay. In 1964 and 1965 approximately 9 per cent of respondent's patients could not pay, and for the years 1957–1963 the average number of nonpaying patients was about 8 per cent or between 5 per cent and 10 per cent of all patients admitted each year. Respondent made efforts to collect from all patients who could pay and such payments constituted most of its income. Other income was received through participation in the vendor program of Missouri which makes payments for services rendered to patients on public assistance. Such payments do not cover all of such accounts and not all public assistance patients' injuries or sicknesses come under the program.

Appellants have analyzed respondent's financial reports for each of the fiscal years July 1, 1957 through June 30, 1965 to show that in that period respondent received $1,-878,497.49 from pay patients, and that services, including some bad debts, valued at $26,069.16 were claimed as charity. By further analysis they show a margin of $19,-458.11 income over expenses and no charity claimed for the first fiscal year, a negative balance of $1,549.84 and no charity claimed for the second fiscal year, $21,162.25 margin and no charity claimed for the third fiscal year, $20,821.61 margin and $1,526.72 charity for the fourth fiscal year, $10,537.07 margin and no charity claimed for the fifth fiscal year, $9,873.69 margin and $409.55 charity for the sixth fiscal year, $27,411.88 margin and $8,883.94 charity for the seventh fiscal year, $41,604.92 margin and $15,248.-98 charity for the eighth fiscal year. At the end of the eighth fiscal year, June 30, 1965,

respondent's net worth had increased to $184,822.37. All such margin of income over expenses in each year has been expended on improvement of building, facilities, equipment, services, and retirement of debts.

Respondent's corporate charter and by-laws were submitted by the Prosecuting Attorney of Randolph County to the office of the Attorney General of Missouri, and Attorney General John M. Dalton on February 12, 1959 was of the opinion "that the charter and bylaws of the Community Memorial Hospital would not appear to prevent its being a charitable institution and entitled to tax exemption if, as a matter of fact, the operation of such hospital is such as to entitle it to be considered a charitable institution." Respondent has filed an annual report with the Office of the Secretary of State of Missouri as required by the General Not-For-Profit Corporation Act. It has never paid unemployment compensation and it has not been required to file a state income tax return. Respondent received a refund from the United States Internal Revenue Service of income tax and interest for fiscal 1957 to 1958, and has since filed tax returns on IRS form 990–A, Return of Organization Exempt from Income Tax.

Until just prior to this litigation defendant Randolph County had entered orders exempting respondent from taxation and abating any assessments for that purpose for the years 1958 through 1963. On July 15, 1964, the Randolph County Court ordered extension of taxes for 1964 and "until a decision is made by the Circuit Court as to the Community Memorial Hospital being a tax exempt institution. The Court further orders that if a decision is made by the Circuit Court that the Community Memorial Hospital is tax exempt the court will abate the taxes." Appellant City of Moberly assessed taxes against respondent for all the years of its existence. Respondent did not pay the taxes thus levied on the ground it was a charitable institution exempt from taxation. In 1964 the city instituted legal proceedings for the collection of its taxes including advertising respondent's property for sale for delinquent taxes, and this suit followed. Defendants County of Randolph and its taxing officials filed no pleadings and were adjudged in default; appellants City of Moberly and its taxing officials prosecute this appeal.

The sole issue is whether, under these facts, respondent's properties are tax exempt.

Pursuant to Section 6, Article X, Constitution of Missouri, V.A.M.S., the legislature enacted (1959 revision) Section 137.-100, V.A.M.S., which declares that certain "subjects are exempt from taxation for state, county or local purposes: * * *

"(5) All property, real and personal actually and regularly used exclusively for * * * purposes purely charitable and not held for private or corporate profit, except that the exemption herein granted does not include real property not actually used or occupied for the purpose of the organization but held or used as investment even though the income or rentals received therefrom is used wholly for * * * charitable purposes."

It is settled "that exemption statutes are strictly but reasonably (so as not to curtail the intended scope of the exemption) construed. * * * charitable use exemption depends upon the use made of the property and not solely upon the stated purpose of an organization." Young Men's Christian Ass'n, etc. v. Sestric, 362 Mo. 551, 242 S.W.2d 497, 502 [1, 2]. "And * * * each tax exemption case is 'peculiarly one which must be decided upon its own * * * facts.' Taxation is the rule. Exemption therefrom is the exception. Claims for exemption are not favored in the law." Midwest Bible & Missionary Inst. v. Sestric, 364 Mo. 167, 260 S.W.2d 25, 29–30 [4–6]. "The phrase 'exclusively used' has reference to the primary and inherent use as over against a

mere secondary and incidental use," Young Women's Christian Ass'n v. Baumann, 344 Mo. 898, 130 S.W.2d 499, 502; and " 'dominant use' or 'principal use' cannot be substituted for the words 'used exclusively.' " State ex rel. Koeln v. St. Louis Y.M.C.A., 259 Mo. 233, 168 S.W. 589, 590.

■ Whether the avowed purposes of respondent are "purposes purely charitable" depends upon definition of "charity" and "charitable purposes." Under a broad concept of those terms there can be no doubt that the stated corporate purposes of respondent are "charitable" within a reasonable definition of that term. Appellants even concede that respondent "provided by its charter and its bylaws for charitable work." See Young Men's Christian Ass'n, etc. v. Sestric, supra, 242 S.W.2d l. c. 502 [3, 4], and note also the opinion of the Attorney General of Missouri.

The more limited question, then, is whether respondent exclusively used its properties for the charitable purposes stated in its articles of incorporation. Appellants summarize their contentions and arguments for a negative answer to this question (and for reversal of the trial court's finding in the affirmative): "Respondent has failed to prove its exception from the rule (of taxation) because the evidence shows:

"1. Respondent is not, in fact, operated as a charity.

"2. Respondent's property is used for corporate profit.

"3. Respondent's property *is not used exclusively* for purposes purely charitable.

"4. Respondent is a competitive commercial business operated for profit.

"5. Even if Respondent could be classed as a charitable institution, it has deviated so far from charitable use of its property that any tax exemption it might have had is lost."

■ 14 C.J.S. Charities § 2 e, p. 422, states that "the test which determines whether a hospital is charitable or otherwise is its purpose, that is, whether or not it is maintained for gain, profit, or advantage"; and this test is recognized in Northeast Osteopathic Hospital v. Keitel, 355 Mo. 740, 197 S.W.2d 970, 975 [8]. An analogy to the principles determinative of the question here appears in the article on the general status of hospitals as charitable institutions and potential classification as "charities" within rules exempting charities from tort liability, 15 Am.Jur.2d 156–157, Charities § 148: "A corporation, the object of which is to provide a general hospital for sick persons, having no capital stock or provision for making dividends or profits, deriving its funds mainly from public and private charity and holding them in trust for the object of sustaining the hospital, and conducting its affairs for the purpose of administering to the comfort of the sick, without expectation or right on the part of those immediately interested in the corporation to receive compensation for their own benefit, is a public charitable institution. Moreover, the facts that a corporation established for the maintenance of a public hospital, by its rules requires of its patients payment for their board according to their circumstances and the accommodation they receive, that no person has individually a right to demand admission, and that the trustees of the hospital determine who are to be received, do not render it the less a public charity. A hospital cannot, however, without losing its character as a public charitable hospital, receive pay patients to such an extent as will exhaust its accommodations and prevent its receiving and extending hospital service to the usual and ordinary number of indigent patients applying for admission under proper rules and regulations adopted by the authority managing and controlling the operation of such hospitals, since a hospital purchased with funds donated for the purpose of establishing and operating a public charitable hospital must

be conducted as such a hospital." See also Koprivica v. Bethesda General Hospital, Mo., 410 S.W.2d 84, 85–86; Adams v. University Hospital, 122 Mo.App. 675, 99 S.W. 453, 456 [3].

Under the evidence in this case showing the use made of respondent's properties, the Randolph County Court by a finding and order July 8, 1963, abated "all personal and real estate taxes against the property of the Community Memorial Hospital for the years 1958 through 1963, inclusive" for the reason "that said property is tax exempt by being owned by and used by a Charitable non-profit corporation;" and by a series of separate orders affecting the assessment and levy for each year against respondent's property, also on July 8, 1963, "The (County) Court, after hearing the evidence, finds that said assessment is erroneous for the reason that same is used for purposes purely charitable and not held for private or corporate profit and is actually used and occupied for the purpose of the organization."

Similarly, respondent has not been required to file a state income tax return, in that such is not required of corporations or associations "organized and operated exclusively for * * * charitable * * * purposes, no part of the net income of which inures to the benefit of any private stockholder or individual," Section 143.120(6), V.A.M.S.; or to pay state unemployment compensation tax on "service performed in the employ of a corporation * * * organized and operated exclusively for * * * charitable * * purposes * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual," Section 288.034(6), V.A.M.S.; or to pay federal tax on income of "corporations * * * organized and operated exclusively for * * * charitable * * * purposes * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual," 26 U.S. C.A. § 501(c).

Admittedly, these direct or tacit administrative opinions and rulings of the Missouri Attorney General, Randolph County Court, Internal Revenue Service, and state revenue divisions are not controlling as are contested judicial rulings, but they "are entitled to respectful consideration," Northeast Osteopathic Hospital v. Keitel, supra, 197 S.W.2d l. c. 974 [6]; and under the evidence of this case, are indicative of the direction in which all the evidence points. That is to say that the stated evidence satisfies all the rules and requirements necessary to respondent's exemption from taxation for the years in question on the ground its property was actually and regularly used for purposes purely charitable and not for private or corporate profit. Such considerations as whether a profit or loss was in fact realized or sustained, Young Men's Christian Ass'n, etc. v. Sestric, supra, 242 S.W. 2d l. c. 505, or that some competition with private business exists, Missouri Goodwill Industries v. Gruner, 357 Mo. 647, 210 S.W.2d 38, 41, Bader Realty & Investment Co. v. St. Louis Housing Authority, 358 Mo. 747, 217 S.W.2d 489, 493, or that pay patients are admitted for treatment, Northeast Osteopathic Hospital v. Keitel, supra, 197 S.W.2d l. c. 975 [9], or that a large part of its revenue is derived from pay patients, Nicholas v. Evangelical Deaconess Home and Hospital, 281 Mo. 182, 219 S.W. 643, 646 [3], State ex rel. Alexian Brothers' Hospital v. Powers, 10 Mo.App. 263, aff. 74 Mo. 476; 51 Am.Jur., Taxation, § 636, p. 607, are not determinative if, from all the evidence, it may be fairly said that the actual use made of the corporation's property is consistent with the nonprofit features and charitable purposes expressed in the corporation's articles of agreement. Such is this case. See also Voelker v. St. Louis Mercantile Library Ass'n, Mo., 359 S.W.2d 689, 694, 696, 697; St. Louis Council, Boy Scouts of America v. Burgess, 362 Mo. 146, 240 S.W.2d 684, 687 [3]; and, since Missouri's general not-for-profit corporation act "appears to have been copied largely from the Re-

vised Statutes of Illinois, S.H.A. Chapter 32, §§ 163a to 163a100," see People ex rel. Cannon v. Southern Illinois Hospital Corp., 404 Ill. 66, 88 N.E.2d 20, granting tax exempt status to a nonprofit hospital corporation under similar circumstances.

Appellants cite Frisco Emp. Hospital Ass'n v. State Tax Commission, Mo., 381 S.W.2d 772, and Evangelical Lutheran Synod of Mo., Ohio and Other States v. Hoehn, 355 Mo. 257, 196 S.W.2d 134, both of which are to be distinguished from this case. In the former, "the facilities of appellant's hospital are available only to members of appellant association. Many years have passed since there were any pay patients. The primary and apparently the sole use of the hospital is for the advantage of the members of plaintiff association." 381 S.W.2d 1. c. 779. The same distinction applies to Trustees of Local 88, etc. v. State Tax Commission, Mo., 367 S.W.2d 549, also cited by appellant. The distinction between Evangelical Lutheran Synod, etc. v. Hoehn, supra, and this case is provided by Missouri Goodwill Industries v. Gruner, supra, 210 S.W.2d 1. c. 40: "In that case we denied tax exemption to a publishing corporation, organized as a subsidiary of the Lutheran Church, which did an extensive business in competition with commercial printing houses. The opinion says: 'A competitive commercial business operated for profit does not comply with that requirement, [purely charitable purposes] even though the profits are devoted to religion.' We think that case was properly ruled, but it differs in important respects from the instant case. There the business was managed and operated in the same manner as any commercial enterprise for profit. True, the profits were turned over to the parent church corporation to be devoted to religious and charitable uses, but the primary purpose of the publishing company was to make profits, while the primary purpose of Goodwill is not to make profits, but to assist handicapped men and women * * *." Similarly, the purpose of respondent here is not to make

profits but to devote any income in its operation to the charitable purpose of operating a hospital for the benefit of all who come to its doors whether as pay or indigent patients.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court. All of the Judges concur.