JACKSON COUNTY, Missouri, et al.,
Respondents,

v.

STATE TAX COMMISSION, Appellant,

and

Saint Luke's Hospital of Kansas City et al.,
Appellants-Intervenors.

No. 58676.

Supreme Court of Missouri,
En Banc.

March 10, 1975.

Rehearing Denied April 14, 1975.

Stanley Christopher, County Counselor, Joe M. Williams, Deputy County Counselor, John Edward Cash, Associate County Counselor, Kansas City, for respondents.

Robert P. Lyons, Howard F. Sachs, Carl H. Helmstetter, Kansas City, for appellant and appellants-intervenors; Spencer, Fane, Britt & Browne, Blackwell, Sanders, Matheny, Weary & Lombardi, Mann, Sullivan &

Gilwee, Lem T. Jones, Jr., Kansas City, of counsel.

Elliott P. Koenig, Thomas, Busse, Goodwin, Cullen, Clooney & Ottsen, St. Louis, for Hospital Assn. of Metropolitan St. Louis as amicus curiae.

Forrest P. Carson, Cullen Coil, Jefferson City, for Missouri Hospital Assn., amicus curiae.

Charles L. Bacon, Shook, Hardy & Bacon, Kansas City, Eugene T. Hackler and Robert C. Londerholm, Hackler, Londerholm, Speer, Vader & Austin, Olathe, Paul T. Miller, Kansas City, for amicus curiae.

Leland B. Curtis, Jefferson City, for James R. Spradling, amicus curiae.

MORGAN, Judge.

The State Tax Commission of Missouri ruled that the tangible personal property of St. Luke's Hospital and the real property of Baptist Memorial and Research Hospitals, all in Kansas City, were exempt from *ad valorem* taxes under the provisions of Article X, § 6, of the 1945 Missouri Constitution, V.A.M.S., and § 137.100(5), RSMo 1969, V.A.M.S. The trial court found to the contrary and entered judgment accordingly; from which, the Commission, and the hospitals as intervenors, lodged their appeal. With construction of the constitution and revenue laws called for, this court has original appellate jurisdiction by virtue of Article V, § 3, of the constitution of this state.

Although the record is rather voluminous, and sometimes technical, there is little dispute as to the underlying facts. In July of 1972 the Board of Equalization of Jackson County assessed for *ad valorem* tax purposes properties owned by the three hospitals. In order to eliminate any issue regarding the valuation of the same, each assessment was set at $100 for 1972. Accordingly, an assessment of $100 was placed upon the real property of Baptist

Memorial used as a hospital; $100 upon the business personal property of St. Luke's; and, $100 upon the real property of Research with the intent of testing in this litigation only the tax status of that portion of the same used as residence quarters for hospital employees, nursing students, para-medical students and their families. The Board's decision that the property was taxable was appealed to the Commission, with an apparent agreement not to challenge the action of the Board as discriminatory, arbitrary or capricious in that these three hospitals are the only ones assessed among thirteen now tax-exempt hospitals in the area of Kansas City. The three are operated by not-for-profit corporations and have never issued any stock nor paid a dividend to any person; and, there is no contention that any members of the corporations have ever received a pecuniary benefit from their respective hospitals. Prior to 1972, the assessor of the county had carried the properties on his rolls as tax exempt. The hospitals have never filed a Missouri state income tax return or paid any sales or use tax on purchases for use in the conduct of hospital functions. Prior to January 1, 1972, they did not pay the state unemployment compensation tax, but have since the applicable statutes were amended (effective on the date noted) to cover employees of charitable organizations. The hospitals are exempt from federal income tax under 26 U.S.C.A. § 501(c)(3) as corporations organized and operated exclusively for charitable purposes, with no part of the net earnings inuring to the benefit of any private shareholder or individual. Contributions to these hospitals are deductible therefore by the donor for federal income tax purposes under 26 U.S.C.A. § 170. Each hospital is governed by a board of directors (or trustees) who donate their time and effort to the establishment of policy, governing of the hospital and service on working committees. The day-to-day management is handled by an Administrator (Research) or an Executive Director (St. Luke's and Baptist) who is salaried and responsible to

(though not a member of) the board of directors or trustees. The medical, surgical and dental staff is selected and appointed by the governing board of each hospital. Only members of a staff have the privilege of admitting patients with some limited exceptions available. However, each hospital maintains large emergency facilities which are open to the public 24 hours per day. Each has turned a profit for several years, i. e., income has exceeded expenses. Any excess has been and is devoted to (a) retirement of debt, (b) expansion and replacement of facilities or (c) improvement of patient care and medical education. Each hospital derives a portion of its revenues from voluntary donations which are placed in trust to further the purposes noted.

Any inquiry as to whether or not the institutions, in fact, are operated in such a manner as to qualify for tax-exempt status is necessary only if the objectives sought to be accomplished fall within the charitable concepts of the constitutional and statutory provisions heretofore cited. Community Memorial Hospital v. City of Moberly, 422 S.W.2d 290, 295 [7] (Mo. 1967). The following excerpts from the Articles of the three governing corporations dispose of this initial question by reflecting that they do, to-wit:

Research: Basically, to care for the sick and to carry on research and teaching and to foster the health of the community, and in such connection to establish, operate and maintain hospitals, clinics, laboratories, plants and all manner of other facilities for the study and care of the human body or any part thereof, and the causes, effects, diagnosis, treatment and prevention of diseases, disorders, maladjustments and abnormalities of the human body * * *

Baptist: . . . to provide treatment to the sick and injured who come to its doors.

St. Luke's: . . . to own, operate and conduct a charity and pay hospital * * *

Article X, § 6, of the 1945 Constitution of Missouri (as amended in 1972) provides, in part, that: ". . . all property, real and personal, not held for private or corporate profit and used exclusively . . . for purposes purely charitable . . . may be exempted from taxation by general law."

Section 137.100 (as amended in 1959), implementing the constitutional provision, provides, in part, that: "The following subjects are exempt from taxation for state, county or local purposes: . . . (5) All property, real and personal, actually and regularly used exclusively . . . for purposes purely charitable, and not held for private or corporate profit . . . ."

No novel question of law is involved nor suggested by the parties. As with other tax exemption cases, disposition of the case must turn on the particular facts presented in the record. Midwest Bible and Missionary Inst. v. Sestric, 364 Mo. 167, 260 S.W. 2d 25 (1953).

Nevertheless, for simplicity of reference and as a guide for consideration of the fatual issues, we do emphasize two cases pertaining to hospitals. Other representative cases, consistent therewith, need only be identified.[1]

1. State v. Academy of Science, 13 Mo. App. 213 (1883); Missouri Historical Society v. Academy of Science of St. Louis, 94 Mo. 459, 8 S.W. 346 (1888); State ex rel. Koeln v. St. Louis Y.M.C.A., 259 Mo. 233, 168 S.W. 589 (1914); In re Rahn's Estate, 316 Mo. 492, 291 S.W. 120 (Mo.1926); State ex rel. St. Louis Y.M.C.A. v. Gehner, 320 Mo. 1172, 11 S.W.2d 30 (1930); National Cemetery Ass'n of Missouri v. Benson, 344 Mo. 784, 129 S.W.2d 842 (1939); Young Women's Christian Ass'n v. Baumann, 344 Mo. 898, 130 S.W.2d 499 (1939); Salvation Army v. Hoehn, 354 Mo. 107, 188 S.W. 2d 826 (1945); Northeast Osteopathic Hospital v. Keitel, 355 Mo. 740, 197 S.W.2d 970 (1946); Evangelical Lutheran Synod, etc. v. Hoehn, 355 Mo. 257, 196 S.W.2d 134

In Buchanan v. Kennard, 234 Mo. 117, 136 S.W. 415 (Mo. banc 1911), this court reviewed the historical premise upon which any concept of "charitable purpose" is predicated. Although construction of a trust was involved, the legal principles therein considered are relevant and applicable, 1. c. 420–421, to-wit: "But a person who is sick, injured, or afflicted, or in a helpless condition, is none the less a proper object to be included in the purpose of a public charity, although he may not be poor. * * * From the foregoing cases it must be taken as settled that public charities for the relief of persons who are made objects of the charity for reasons other than their poverty will be upheld. The language of the case last cited, as to the purpose of the trust, does not differ materially from that of the bequest under consideration, and, construing it, the court said: 'The rich should not be turned away because of their wealth, nor the poor because of their poverty.' And why is not that, as was the purpose of the testator in this case, the true spirit of public charity? It was said of old, 'The poor always ye have with you'; and because of that truth, and the need, want, and distress which closely wait upon poverty, the poor have always been, and ever will be, the chief concern of those who have means and are moved by the noble purpose of devoting it to the well-being of their fellow men. But sickness, pain, and suffering are the heritage of all. We are continually attended by peril and may at any time, and when least expected, be stricken by misfortune and affliction. No man can be so rich or so circumstanced as to be exempt from this condition. And, if so overtaken, is charity to withhold its ministrations because the stricken sufferer may not be poor? Is the Samaritan to refuse to bind up the wounds of the unconscious man on the wayside because he may have means to pay a physician? Charity, whether public or private, sees the need, or want, or affliction, or suffering, and its first concern is to bring relief. The question of whether the recipient is able to pay is the merest incident and of minor importance. In the case under consideration, the ability of the sick or injured to pay may be regarded as almost an intrusion into the high charitable purpose of the benefactor, who would relieve 'sick and injured persons, without distinction of creed.' Such a gift and for such a purpose, aside from the aid of the liberal rule of construction applied by the courts in such cases, comes well within the language of this court in upholding as public charities, 'gifts which are for the amelioration of the condition of mankind.' "

That the principles (or standards) enunciated in Buchanan v. Kennard are still viable is evidenced by the recent decision of this court in Community Memorial Hospital v. City of Moberly, supra, 422 S.W.2d at 1. c. 295, to-wit: "An analogy to the principles determinative of the question here appears in the article on the general status of hospitals as charitable institutions and potential classification as 'charities' within rules exempting charities from tort liability, 15 Am.Jur.2d 156–157, Charities § 148: 'A corporation the object of which is to provide a general hospital for sick persons, having no capital stock or provision for making dividends or profits, deriving its funds mainly from public and private charity and holding them in trust for the object of sustaining the hospital, and conducting its affairs for the purpose of administering to the comfort of the sick, without expectation or right on the part of those immediately interested in the corporation to receive compensation for their own benefit, is a public charitable institution. Moreover, the facts that a corpora-

(1946) ; Missouri Goodwill Industries v. Gruner, 357 Mo. 647, 210 S.W.2d 38 (1948) ; Bader Realty & Investment Co. v. St. Louis Housing Authority, 358 Mo. 747, 217 S.W. 2d 489 (Mo. banc 1949) ; Frisco Employes' Hosp. Ass'n v. State Tax Com'n, 381 S.W.2d

772 (Mo.1964) ; Defenders Townhouse, Inc. v. Kansas City, 441 S.W.2d 365 (Mo.1969) ; Paraclete Manor of Kansas City v. State Tax Com'n, 447 S.W.2d 311 (Mo.1969) ; St. John's Medical Center, Inc. v. Spradling, 510 S.W.2d 417 (Mo.1974).

tion established for the maintenance of a public hospital, by its rules requires of its patients payment for their board according to their circumstances and the accommodation they receive, that no person has individually a right to demand admission, and that the trustees of the hospital determine who are to be received, do not render it the less a public charity. A hospital cannot, however, without losing its character as a public charitable hospital, receive pay patients to such an extent as will exhaust its accommodations and prevent its receiving and extending hospital service to the usual and ordinary number of indigent patients applying for admission under proper rules and regulations adopted by the authority managing and controlling the operation of such hospitals, since a hospital purchased with funds donated for the purpose of establishing and operating a public charitable hospital must be conducted as such a hospital.' See also Koprivica v. Bethesda General Hospital, Mo., 410 S. W.2d 84, 85–86; Adams v. University Hospital, 122 Mo.App. 675, 99 S.W. 453, 456 [3]."

■ From the two cases, from which quotes have been extracted, the existing law in the state of Missouri is clearly discernible, i. e., providing of hospital facilities for the sick in a non-profit manner rises to a charitable purpose tax-exempt status if the same is available to both rich and poor. Elimination of the latter requirement would have simplified the matter for all concerned but such suggestions have been and, again, are rejected.

The crucial question in this case can thus be posed. Do the poor have meaningful access to the facilities of St. Luke's, Baptist or Research?

After reviewing the record made before it, the Commission filed forty (40) Findings of Fact and twelve (12) Conclusions of Law.

We need only note those findings dispositive of the case. After detailing findings establishing that each of the hospitals has developed a wide reputation for excellence in hospital care, the following, among others, were made: (a) "8. Each of the hospitals operates emergency facilities on a 24-hour basis."; (b) "10. No one requiring emergency treatment has ever been denied it by any of the hospitals for financial reasons."; (c) "17. The facilities of each of the hospitals are open to all persons without regard to race, creed, color or sex."; (d) "18. None of the hospitals has ever denied admission to any patient seeking admission solely on the ground of his inability to pay for the services to be rendered"; and, "19. Each of the hospitals accepts and admits indigent patients; none has any restriction on the admission of indigent patients." In addition, Number 22 listed what the Commission classified as "unreimbursed patient care" for the years 1967 through 1971. Believing it sufficient, we note the figures only for 1971: St. Luke's—$1,364,200, Baptist—$803,068 and Research—$889,586. The trial court, in effect, rejected the validity of each finding specifically mentioned for the reason they were unsupported by competent and substantial evidence. In reaching this conclusion, it was found that Baptist and Research did a minimal amount of charity work but that, "St. Luke's in 1971 had *no* records showing *any* charitable services rendered indigent patients . . ." Thus, generally, consideration of St. Luke's will suffice.

■ In its memorandum filed, the trial court emphasized that the hospitals had never paid "as much as one cent of tax on their fine, expensive and beautifully-equipped hospital properties for the support of the schools, the roads, the streets, the fire and police protection, or any other governmental functions . . . ." Only because it appears that the court's approach to the question was primarily bottomed on the declaration just noted, do we comment on the same. For two reasons such a factual truth is irrelevant: (1) by authorizing a tax exemption in their con-

stitution, the citizens of the state expressed a desire that the very result complained of take place; and, (2) it is inaccurate to suggest that no contribution is being made to "governmental functions" as the basis of the exemption allowed is that the activity be one tending to lessen "the burdens of government." Salvation Army v. Hoehn, 354 Mo. 107, 188 S.W.2d 826, 830 (1945).

As to St. Luke's, the court found "that all patients presenting themselves for admission to . . . are first questioned as to their resources from which payment of hospital charges may be expected. All patients admitted are billed for the services provided. Some who are unable to pay . . . are charged off as bad debts. The amount of such charge-offs for 1971 was $243,100 or approximately one per cent of the annual billings * * * No records are maintained by St. Luke's which would permit a calculation of the value of such services as are rendered to indigent patients. Whatever figure it is forms a part of the record of teaching care expense or uncollectible bad debts." Thereafter, the court discussed at length the necessity for "approval" of a doctor to become a member of the staff and have patient admitting privileges; and, without benefit of anything we have been able to find in the record, then declared that staff-doctors probably do not have indigent patients. From all of which, the court concluded that the institutions in question "exist and operate for the benefit of the affluent . . ."

■■ The evidence in the record that no person has ever been denied admission because of inability to pay is uncontradicted. A president of one of the corporations said that: "Nearly one-third of the patients that are admitted to the hospital end up, in one way or another, being in some way, either charitable or partial-paying patients." Persons in management positions were emphatic in so testifying; and the Commission, being in a position to judge credibility, accepted the same as true. We find nothing in the evidentiary portion of the record to the contrary. Procedures for approval and appointment of staff-doctors need not be detailed. Accrediting standards require as much to assure a competent and qualified staff. Citizens of the state, on behalf of potential patients, would be the last to complain of such an objective.

St Luke's has a record keeping procedure calling for all charges to be entered for any patient admitted. All bills are not paid and those not are classified as unreimbursed patient care. The categories include: (1) Indigent patients—those admitted knowing the hospital will absorb the cost of the care; (2) Bad debts—those admitted with the belief they will pay for their care but who in fact do not; (3) Unreimbursed portion of the cost of caring for the medically indigent under the state's Title XIX (Medicaid) program; (4) Medicare losses and disallowances; and (5) in the case of St. Luke's, teaching bed expense—provided gratuitously to fulfill the teaching purpose. Such an approach to patient care does not do violence to the charitable purposes, heretofore noted, in the corporate articles.

■ In this case it is not necessary to mathematically reach a precise breakdown of the percentages, charitable and noncharitable, of income because of the overwhelming evidence that the three hospitals qualify as tax-exempt under the existing law of this state. Although "percentages" may in some future case be controlling, total reliance on the same continues to become more questionable; because the advent of modern day social legislation has resulted in more plans to provide more citizens with assistance in paying for hospital care. The result, however, will be the same as the ultimate objective always has been an evaluation of the total operation, in all of its aspects, of any organization claiming a tax exemption.

■ As to the question limited only to Research, pertaining to the use of certain residence quarters by nurses and other

medically involved persons, we agree with the Commission that the exemption thereof should be sustained as incident to the hospital's basic objectives. The situation is so comparable to that found in Bethesda General Hospital v. State Tax Commission, 396 S.W.2d 631 (Mo.1965), that we believe the decision therein is controlling.

■ Did the Commission follow the proper legal "standard" in resolving the factual issues? Conclusion of Law Number 6, in part, reads: "In Missouri the operation of a hospital for the care of the sick and infirm is itself a purely charitable purpose." As so limited, the same is erroneous. However, to the credit of the Commission, it must be said that the courts of this state have used the same language in some cases. Not one of such cases, however, has reached a decision solely within the limitations of such words, and an abbreviated reference to the standard can be found only in those instances where all of the appendages, i.e., available to all, rich or poor, not limited to employees nor primarily for teaching purposes and other specifics, were not particularly significant or a controlling factor in disposition of the case. Undoubtedly, "precision" should be the objective of all. We do not believe, however, that the Commission has been misled or was unaware of the state of the law. This, for the reason that most of the factual findings made, of which several were heretofore quoted, direct themselves to the extent of access available to all— both rich and poor. Since that effort would have been unnecessary otherwise, it is obvious that the Commission assumed that a reader of Conclusion Number 6 would be aware of the refinements inherent therein.

The ruling of the Commission that the three hospitals qualified for tax-exempt status was based on substantial and competent evidence and should have been upheld.

The judgment is reversed and the cause is remanded.

All concur.