**CALLAWAY COMMUNITY HOSPITAL ASSOCIATION, Appellant,**

v.

**Ronald CRAIGHEAD and Melvin Tate, Respondents.**

**No. WD 40079.**

Missouri Court of Appeals, Western District.

Aug. 16, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1988.

Application to Transfer Denied Nov. 15, 1988.

Thomas M. Dunlap, Whitlow, Riley, Mariea & Dunlap, Fulton, for appellant.

Craig A. Van Matre, Columbia, for respondents.

Michael Madsen, Carson, Coil, Riley, McMillin, Levine & Veit, Jefferson City, for Missouri Hosp. Ass'n, Amicus Curiae.

Before TURNAGE, P.J., and SHANGLER and MANFORD, JJ.

TURNAGE, Presiding Judge.

Callaway Community Hospital brought suit against the Callaway County assessor and collector for a refund of 1985–1986 ad valorem taxes which were paid under protest. The court entered judgment in favor of the assessor and collector.

The Hospital contends it is entitled to the charitable exemption from the payment of ad valorem taxes as set forth in Art. 10, § 6 of the Missouri Constitution and § 137.100, RSMo 1978. Reversed and remanded.

There was little dispute in the facts. Callaway Community Hospital Association is a not-for-profit corporation incorporated in the State of Delaware and authorized to do business in Missouri. It is owned by another Delaware not-for-profit corporation, CHAMA, INC. The hospital has been deemed tax exempt by the IRS and the State of Missouri.

The hospital was constructed at a cost of approximately 12 million dollars. Of this amount CHAMA advanced 1.7 million with the balance being financed by revenue bonds. The hospital opened in September of 1984 with a license for 58 beds which was later amended to 53 beds. The hospital is the only one in Callaway County and includes an emergency room which provides emergency medical service twenty-four hours per day.

The hospital is governed by a board of directors which is appointed by CHAMA. In accordance with the certificate of Incorporation, which provides that no part of the net income of the hospital shall inure to the benefit of any director, officer, or private individual, the directors are not compensated for their services by the hospital. In addition to the Board of Directors, there exists an advisory board of trustees which consists of the hospital administrator, two physicians and four lay persons, residents of Callaway County, whose function is to approve the appointment of physicians to the medical staff.

The admission of patients to the hospital is at the sole discretion of physicians on the medical staff. About 1100 patients were admitted to the hospital in 1985 and about

968 in 1986. In addition, 4400 persons were treated in the emergency room in 1985, and in 1986, 4700 persons were treated there.

To date, the hospital has operated at a loss. In 1985 this amounted to $241,821 and in 1986 the figure rose to $696,096.

In its accounting procedures the hospital carries an account labeled "provision for doubtful accounts." This account consists primarily of services rendered to those patients who cannot pay, with a small remainder representing service rendered to patients who can pay but do not. In essence, approximately 4.9% of the hospitals operating expense was allocated to services rendered to indigent patients.[1]

Although the hospital has collection policies which require it to attempt to collect payment from all patients, hospital administrators testified that no person had ever been denied treatment or refused admission to the hospital due to inability to pay. The only obstetrician gynecologist on the medical staff testified that the hospital had never refused to admit any person on the basis of indigency which he wished to admit. He further testified that if faced with a non-emergency situation and a patient who could not pay, he would refer that patient to the University of Missouri Hospital approximately 30 miles away. The doctor stressed, however, that this was a personal decision and in no way reflected hospital policy on the issue. There was no evidence that anyone had ever been refused service in the emergency room.[2]

There is a freestanding medical offices building owned by the hospital located on the same 20 acre tract as the hospital. Some office suites have been sold to physicians. The medical offices building was not a part of the 1985 assessment but was included in the 1986 tax bill to the hospital.

The hospital agrees that the office building is not exempt from taxation.

In its findings of fact and conclusions of law the court found the hospital to be a not-for-profit corporation, but that it does not provide all persons, rich or poor, with care. The court further found that the non-emergency patient who is indigent and not eligible for government assistance was sent to the University of Missouri Hospital. The court found that patients experiencing financial difficulties were neither counseled nor encouraged to qualify for any charitable care; rather, the hospital personnel used all available means to encourage patients to pay. The court concluded that as the hospital does not provide care to all persons, rich or poor, it is not entitled to a tax exemption.

In *Franciscan Tertiary Province of Missouri, Inc. v. State Tax Commission*, 566 S.W.2d 213 (Mo. banc 1978), the court reviewed a number of cases which had considered the constitutional and statutory exemption provisions and found the cases to be inconsistent. The court formulated a test by which several factors are considered in determining if an exemption is proper. Initially it must be determined that the property is owned and operated on a not-for-profit basis. *Id.* at 224[5]. The court stipulated that the property must be dedicated to a charitable activity such that no profit accrues to either an individual or a corporation. However, the court pointed out that so long as any profit received is incidental to the charitable objective, there is no reason that the not-for-profit activity cannot operate in the black.

The second requirement set forth by the court "is that the dominant use of the property must be for the benefit of an indefinite number of people" and among other purposes be to relieve their bodies from disease or suffering. *Id.* at 224[7].

---

**1.** The county officials presented evidence from an expert in hospital finances that publicly owned hospitals provide an average of about 11% of their operating expense to patients who cannot pay. The average for private not-for-profit hospitals is about 5%.

**2.** Two physicians who were not on the active staff of the hospital testified that they *under-*

*stood* the policy of the hospital to require non-emergency patients to have insurance or pay. Neither knew the hospital policy as to indigent patients. Their testimony was at best speculation. This would not constitute substantial evidence on which to base a finding that the hospital did not treat rich and poor alike.

The court stated that examples of humanitarian activities which fall within the second requirement include "... the operation of hospitals which are open and available to rich and poor." *Id.* at 224[7].

In *Franciscan Tertiary,* the court cited with approval *Jackson County v. State Tax Commission,* 521 S.W.2d 378 (Mo. banc 1975). In *Jackson County,* the court considered whether or not three hospitals in Kansas City qualified for tax exemption. The court there cited *Buchanan v. Kennard,* 234 Mo. 177, 136 S.W. 415 (Mo. banc 1911) and *Community Memorial Hospital v. City of Moberly,* 422 S.W.2d 290, 295[7] (Mo.1967). From these two cases the court concluded that:

> [T]he existing law in the state of Missouri is clearly discernible, i.e., providing of hospital facilities for the sick in a non-profit manner rises to a charitable purpose tax-exempt status if the same is available to both rich and poor. *Jackson County,* 521 S.W.2d at 383.

■ The court in this case apparently took the view that in order to be a charitable activity, the hospital was required to treat a certain number of poor patients and post signs that care was available regardless of ability to pay. In addition, the court found that the hospital should offer counseling to patients regarding assistance available to those unable to pay. Clearly, this is in contravention of both case law and statutory authority. *Jackson County* held that a charitable use includes a hospital so long as it is operated in a not-for-profit manner and is available to rich and poor alike. A hospital which meets the test is a charity without further proof that a certain number or percentage of indigent patients are served.

In *Jackson County,* the court found that St. Luke's Hospital charged off about 1% of its annual billings but did not break this down into the amount rendered to indigent patients. However, the court approved tax-exemptions for that hospital on the uncontradicted evidence that no patient had ever been denied admission because of inability to pay. In *Community Memorial Hospital,* the evidence showed years in which no services were given to indigent patients.[3] The court found the hospital qualified as exempt from taxation. No case has imposed a requirement that a hospital serve a certain number of indigent patients. All that is required is stated in *Franciscan Tertiary.*

■ The court also indicated that the efforts of the hospital in trying to collect payment for its services was a disqualifying factor in achieving a tax-exempt status. In *Community Memorial Hospital,* the court noted that the hospital made efforts to collect from all patients who could pay. *Community Memorial,* 422 S.W.2d at 293. Such an effort was not found to disqualify the hospital from tax-exemption.

■ Although there was no evidence that anyone had been refused admission to the hospital, the court found that the hospital did not provide all persons rich and poor with care. The only evidence presented was testimony by one person who said she had been denied non-emergency service of blood testing when she could not pay. Also, one man was denied out-patient surgery of a non-emergency nature. This is not substantial evidence that the hospital did not treat both the rich and poor. There was no evidence that anyone had been denied admission to the hospital because of inability to pay. All of the evidence indicates that the hospital provided services to everyone, but did attempt to collect from those who could pay.

The concerns of the trial court were addressed in *Community Memorial Hospital:*

> [T]he facts that a corporation established for the maintenance of a public hospital, by its rules requires of its patients payment for their board according to their circumstances and the accommodation they receive, that no person has individually a right to demand admission, and that the trustees of the hospital deter-

---

**3.** The county officials contend *Community Memorial Hospital* was overruled by implication in *Franciscan Tertiary.* No such holding is discerned by this court.

mine who are to be received, do not render it the less a public charity.

422 S.W.2d at 295.

The court apparently felt that patients were being "dumped" on the University of Missouri Hospital. No evidence was presented that the hospital had "dumped" any patients. The physician who said he referred non-emergency indigent patients did so on his own initiative, without any suggestion on the part of the hospital. He stated that the hospital had never refused admittance to any patient he sought to admit whether the patient was able to pay or not.

The evidence demonstrates that the hospital meets the test in *Franciscan Tertiary, Jackson County,* and *Community Memorial* for charitable exemption. The out-of-state cases relied upon by the county officials cannot be considered in view of the ample Missouri precedents establishing the requirements for a charitable exemption. The judgment denying the tax exemption is not supported by substantial evidence.

The hospital paid $47,974.76 for 1985 taxes and $49,305.92 for 1986 taxes. The 1986 figure included $3,053.83 as taxes on the medical office building.

The judgment is reversed and this cause is remanded with directions to enter judgment finding the hospital exempt from ad valorem taxes and ordering the sum of $49,974.76 refunded which was paid for 1985 taxes and the sum of $46,252.09 refunded which was the amount of 1986 taxes less the amount levied on the office building.[4]

All concur.

---

4. Under § 139.031.7, RSMo 1986, the hospital is entitled to the interest which the collector earned on the amount ordered refunded.